UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN DASENBROCK,<br><br>       Plaintiff,<br><br>  vs.<br><br>A. ENENMOH, et al.,<br><br>       Defendants. | 1:11-cv-01884-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT PEREZ'S MOTION FOR SUMMARY JUDGMENT BE GRANTED (ECF No. 230.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.  BACKGROUND

Robin Dasenbrock ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on November 14, 2011.  (ECF No. 1.)   This case now proceeds with Plaintiff's Second Amended Complaint ("SAC") filed on September 8, 2015, against defendants Dr. A. Enenmoh, Correctional Officer Perez-Hernandez ("C/O Perez"), Nurse Page, and Nurse Laura Adair, on Plaintiff's claims for violation of the Eighth Amendment and related state-law negligence.  (ECF No. 140.)

On May 8, 2017, defendant C/O Perez ("Defendant") filed a motion for summary judgment.[1] (ECF No. 230.) On May 30, 2017, Plaintiff filed an opposition to the motion. (ECF No. 238.) On August 31, 2017, Defendant filed a reply to the opposition. (ECF No. 263.) The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion should be granted.

## II. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment; he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets her initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires

///

---

[1] Concurrently with his motion for summary judgment, Defendant Perez served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 224-5.)

Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III. SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT PEREZ IN THE SECOND AMENDED COMPLAINT (SAC)[2]

Plaintiff is a state prisoner presently incarcerated at Mule Creek State Prison. During the events at issue in the SAC, Plaintiff was incarcerated at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, and Defendant Perez was a correctional officer at SATF, assigned to the E Facility medical clinic's general area.

Beginning in 2007, Plaintiff suffered from rectal bleeding from internal hemorrhoids. Three and a half years later, on December 30, 2009, hemorrhoidectomy surgery was performed, but Plaintiff did not improve. He continued to bleed from the rectum.

On January 2, 2010, three days after Plaintiff's hemorrhoidectomy, Nurse Adair and C/O Perez were working at the E yard medical clinic, at the A-L window. Plaintiff went to the medical clinic because he had not had a bowel movement. He approached the medical window and noticed his name on the cold medication pick-up list. (SAC, ECF No. 140 at 46 ¶101.) Plaintiff knew that "doctors had prescribed a large number of meds post surgery: laxatives, pain

---

[2] Plaintiff's SAC is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

meds, antibiotics, etc." (Id. at 108:11-16.)[3]  Plaintiff approached the A-L window and asked for his medications.  Defendant Adair could not find Plaintiff's medication and told Plaintiff he had no medications.   Plaintiff told her he had just had surgery and pointed to his name on the list, saying he must have medication.  Defendant Adair became angry and ordered Plaintiff away from the window.  Plaintiff complained that he was just out of surgery, in severe pain, had not had a bowel movement in three days, was bleeding profusely from the rectum, and wanted to "check in" to medical, go to CTC, or go back to the hospital.  (Id. at 19:11, 28:26-29:1.)

Defendant Perez then got involved, approached Plaintiff from inside medical, talking to him outside, and angrily ordered Plaintiff away from the window.  Defendant Perez knew the day before, on January 1, 2010, that Plaintiff was bleeding because when Plaintiff returned from the hospital after surgery, Plaintiff complained to Defendant C/O Perez that he was bleeding and would like a shower, which defendant Perez refused.  (Id. at 29:25-30 – 30:3.)

On January 2, 2010, Plaintiff again complained, "but I'm bleeding from the rectum," and C/O Perez "made a joke to go tell his block officers like he had been violated" sexually, and again ordered Plaintiff away from medical or he would receive a 115 disciplinary write up.  (Id. at 19:13-15; 29:5-10.)  C/O Perez's remarks made all the prisoners in the medication line, and the guard outside, laugh.  Plaintiff refused and said to both Adair and Perez, "I want to check into medical."  (Id. at 29:11.)  Defendant Perez then ordered Plaintiff to return to his housing unit or receive a 115 disciplinary write up.  (Id. at 29:11-13.)   Plaintiff was forced to return to his building and was told by his floor correctional officers, after he reported what had happened, that he was going to be written up for manipulation of staff by Defendant Perez.  (Id. at 29:13-17.)

Plaintiff alleges that Adair and Perez did not follow their own regulations and protocols when Plaintiff requested medical assistance.  (Id. at 26:21-23.)    No medical help was given and Plaintiff had to spend the night in severe pain and bleeding until the next day when he

---

[3] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials

4

returned again to the medical clinic, received the antibiotics dated the previous day, and also received a one-use enema kit to temporarily help with the constipation. (<u>Id.</u> at 29:18-23.) On January 2, 2010, Plaintiff filed a 602 appeal concerning C/O Perez's and Nurse Adair's actions. (<u>Id.</u> at 48 ¶126.) At the top of the 602, prison officials stamped the words "non emergency" even though Plaintiff stated how dire his condition was. (<u>Id.</u>)

Plaintiff was not allowed to see any attending physician or qualified medical staff even though, according to the CMO who responded to Plaintiff's 602 appeal, one was available 24 hours a day. (<u>Id.</u> at 49 ¶131.) "Urgent and emergent response" section B states that inmates may at any time express to any CDC employee their concerns regarding a condition they believe warrants urgent or emergent care, and medical staff is available 24 hours a day. (<u>Id.</u> at 47-48 ¶121.) Eight days after surgery, Plaintiff received Tylenol 3. (<u>Id.</u> at 89:20.)

Plaintiff suffered emotional distress because of Defendant Perez's comments. (<u>Id.</u> at 47 ¶112, 116 at 19-21.) Because of his blood loss, Plaintiff developed severe anemia with resulting heart complications – sharp stabbing pains in the chest, shortness of breath, dizziness, tiredness, weakness, etc. – and Plaintiff had to be rushed to the Bakersfield Hospital emergency room for life-saving blood transfusions. (<u>Id.</u> at 24:9-13.)

Based on these allegations, Plaintiff brings claims for violation of the Eighth Amendment and negligence.

## IV.   DEFENDANT'S FACTS[4]

Plaintiff Robin Dasenbrock (E92288) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR), who is currently incarcerated at Mule Creek State Prison in Ione, California. (SAC, ECF No. 140.) At all times relevant to the allegations in the Second Amended Complaint, Dasenbrock was incarcerated at SATF. (<u>Id.</u> at 12.)

///

///

---

[4] Summarized from Defendant's Statement of Undisputed Facts 1-26, ECF No. 230-3.

On January 2, 2010, Dasenbrock entered the Facility E Medical Clinic for a prescription. (Id. at 19.) Dasenbrock was told by Adair that there were no prescriptions available for him at the time of his visit and ordered him away from the window. (Id.)

During third watch on January 2, 2010, Defendant Perez was a Health Care Officer at the Facility E Medical Clinic. (Perez Decl., ECF No. 30-6 ¶4.) As Health Care Access Officer, Perez was responsible for assisting inmates with access to treatments and maintaining security within the Medical Facility. (Id. ¶5.) As a Health Care Access Officer, Perez monitored the interactions and treatments of inmates by medical staff at the treatment window. (Id.) When an inmate arrives at the treatment window, common practice is for the Health Care Access Officer to not interfere with the inmate's interaction with staff. (Id. ¶7.) It is outside the scope of a Health Care Officer's duties to advise the inmate which prescriptions are available to him at any moment in time. (Id.) Common practice for a Health Care Officer is to order an inmate to leave the Medical Facility at the conclusion of their visit with medical staff. (Id. ¶8.)

Perez ordered Dasenbrock to leave the treatment window at the conclusion of his visit. (SAC, ECF No. 140 at 19.) Perez instructed Dasenbrock that he would receive an RVR if he did not leave the facility. (Id.) Dasenbrock complied with the order and left the medical facility. (Id.)

Dasenbrock did not sustain any injury between January 2, 2010 and February 3, 2010 as a result of the delay in his medications. (Ugwueze Decl., ECF No. 208-5 ¶13.) Dasenbrock received portions of his post-op prescription, including Tylenol No. 3, on January 5, 2010. (Id. ¶¶7(e), 11.) As part of his post-op discharge on December 31, 2009, Dasenbrock received Motrin, Tylenol No. 3, Cephalexin, and Tucks briefs. (Id. ¶¶7(b)-(e).) Dasenbrock made no complaints of aggravated post-op injury at a January 7, 2010 follow-up appointment. (Id. ¶7(f).) Dasenbrock did not complain of exacerbated post-op issues at a January 13, 2010 follow-up appointment. (Id. ¶7(g).) By February 3, 2010, Dasenbrock presented with no complaints, minimal swelling to his rectal area, and healed rectal tissue. (Id. ¶7(h).) The pain and bleeding that Plaintiff suffered from on January 2, 2010 is expected, given the type of surgery he had. (Id. ¶8.) Resolution of acute pain following a hemorrhoidectomy may take

several days to a few weeks.  (Id.)  The process of healing the surgical wound and modeling of the wound to restore tissues can take months.  (Id.)  Dasenbrock's treatment records reflect that he recovered under the acceptable recovery time for a hemorrhoidectomy.  (Id. ¶¶8, 10, 13.)

Dasenbrock's Government Claim No. 596404 was received by the Board on April 6, 2011. (D's Request for Judicial Notice (RJN), ECF No. 31, Ex. A at p. 4.)  The Board notified Dasenbrock that his claim would only cover the immediately preceding six-month period of alleged misconduct. (Id.)

## V.    PLAINTIFF'S RESPONSE[5]

Plaintiff Robin Dasenbrock (E-92288) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who is currently incarcerated at Mule Creek State Prison in Ione, California.  (SAC, ECF No. 140.)   At all times relevant to the allegations in the Complaint, Dasenbrock was incarcerated at the Substance Abuse Treatment Facility (SATF) in Corcoran, California. (Id.)

On January 2, 2010, Plaintiff approached the A-L window outside the facility E clinic at SATF to report he was experiencing excessive pain and bleeding.  (ECF No. 245 ¶4.)  Plaintiff was also listed on the medication pick up list and attempted to pick up his medication.  (Id.) Dasenbrock was told by Nurse Adair that there were no prescriptions available for him at the time of his visit.  (ECF No. 140 at 19.)

During third watch on January 2, 2010, Defendant Perez was a Health Care Officer at the Facility E Medical Clinic. (Perez Decl., ECF No. 230-6 ¶4.)  As a Health Care Access Officer, Perez was responsible for assisting inmates with access to treatments, and maintaining security within the Medical Facility.  (Perez Decl., ECF No. 236-6 ¶5.)  As a Health Care Access Officer, Perez monitored the interactions and treatments of inmates by medical staff at the treatment window.  (Perez Decl., ECF No. 236-6 ¶5.)  When an inmate arrives at the treatment window, common practice is for the Health Care Access Officer to not interfere with

---

[5] Summarized from Plaintiff's Undisputed Facts (ECF No. 244), Response to Defendant's Statement of Undisputed Facts, (ECF No. 245), and Plaintiff's Declaration (ECF No. 246).  These documents were all signed by Plaintiff under penalty of perjury.

the inmate's interaction with staff. (Perez Decl., ECF No. 236-6 ¶7.) It is outside the scope of a Health Care Officer's duties to advise the inmate which prescriptions are available to him at any moment in time. (Id.)

It is not common practice for a health care officer to order an inmate to leave the medical facility at the conclusion of their visit with medical staff. (ECF No. 245 ¶11; P's Decl., ECF No. 246 ¶4.) Common practice is for medical staff to do so only after the inmate has been appropriately evaluated and the nurse orders the inmate to leave first. (Id.) Perez ordered Dasenbrock to leave the treatment window at the conclusion of his visit. (ECF No. 140 at 19.) Perez instructed Dasenbrock that he would receive an RVR if he did not leave the facility. (Id.) Dasenbrock complied with the order and left the medical facility. (Id.)

In his response to Plaintiff's appeal log no. 10040, Defendant Enenmoh stated, "Inmate Medical Services Program Policies and Procedures (2006) Volume 4, Chapter 12; Urgent and Emergent Response section B which . . . states, in part . . . care . . . is based on the assessment by qualified medial staff. (ECF No. 248-1 at 57.) Defendant Perez admits (ADM #31) that he is aware of this policy and that medical staff is available 24 hours a day to meet the needs of patients that need such care. (P's Decl., ECF No. 246 ¶2.). Defendant Perez is incorrect when he states that if the inmate believes he has not received adequate medical treatment he must submit a CDCR form 7362 healthcare request (P.2[10] of Declaration of Perez-Hernandez).[6] (Id.) CDCR HCS Protocol P. 1-3-1, chapter 3, Access to Care states that "All inmates, including those in segregation, shall be provided the opportunity to report an illness, injury, or any other health concern wherever they occur. (Id.) If custody staff becomes aware, by any means, that an inmate needs immediate health care services, they shall contact health care staff for directions" (see ADM #34 of Defendant Perez). (Id.) Defendant himself has provided statements contradicting his declaration that an inmate must submit a CDCR 7362 for health care requests. (P's Decl. ¶2.)

///

---

[6] The reference to "P.2[10]" and other similar references found in this order (e.g., "P.2[12]", "P.2[20]", "P.E. 79[9]", "P.E. 102[24]") are Plaintiff's references to his exhibits. They do not refer to court footnotes.

Defendant Perez declares he does not recall ordering Dasenbrock to leave the treatment window on January 2, 2010 (P.2[12] of Perez Decl.); yet on P.2[20] of Defendant's memorandum of points and authorities in support of Defendant's motion for summary judgment, Defendant states, "'At the conclusion of Plaintiff's visit, Perez, the on duty officer, ordered him to leave the treatment window and return to his cell,' (DUF 12)." (Id. ¶3.)

Plaintiff sustained injury between January 2, 2010 and February 3, 2010 as a result of the delay in receiving his medications, as shown in the record at P.E. 62 on January 2, 2010 Exhibit G 602 #10040, "I haven't had a good bowel movement in three days and do still bleed from the rectum . . . I simply tried to get my meds in the hopes the pain would be alleviated or check in to the hospital due to the rectal bleeding. (ECF No. 245 at 2 ¶15(a).)[7] On January 4, 2010, Dr. Metts felt Plaintiff's pain was so serious he prescribed Tylenol 3 (an opiate) for four days to relieve some of the pain. (Id. at ¶15(b); P.E. 69.) P.E. 69 shows Plaintiff did not receive Tylenol 3 until January 6, 2010 (8 days after his surgery. (Id. at 3 ¶15(c).)

In P.E. 72 on January 13, 2010 (DEFS0771) Dr. Parvez reports that "Patient still has some occasional bleeding from the rectum," after Plaintiff complained of excessive bleeding and constipation. (Id. at 3 ¶15(d).) Dr. Parvez also noted the "patient's stool is still hard (which was two weeks after surgery) and prescribed milk of magnesia to go along with the Colace that Plaintiff was already on. (Id.) There was also a stitch hanging loose. (Id.)

In P.E. 87 on February 2, 2010, Plaintiff submitted a 7362 form to SATF medical documenting his complaints of shortness of breath and dizziness (Plaintiff was on Chronic Care for his heart). (Id. at ¶15(e).) Dr. Metts told Plaintiff on September 3, 2010 that severe loss of blood can bring about these symptoms (see P. 57[6] of Plaintiff's complaint). (Id.) In P.E. 79 on February 3, 2010, Dr. Parvez during his surgery clinic stated in part . . . "after a bowel

---

[7] In Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment, (ECF No. 245), Plaintiff refers to individual exhibits (P.E.) to be found within the 59 pages of exhibits attached to his Opposition to Defendant Perez's Motion for Summary Judgment (ECF No. 242 at 65-124) and the 477 pages of exhibits attached to his Opposition to Defendant Enenmoh's Motion for Summary Judgment (ECF No. 248-1 at 50-250; ECF No. 248-2 at 1-277). The court has made a good faith effort but is unable to locate all of the individual exhibits to which Plaintiff refers. While the individual exhibits may be there, Plaintiff has not clearly directed the court where to find them within the 535 pages of exhibits.

movement there is still an element of bleeding that happens." (Id. at ¶15(f); P's Decl., ECF No. 246 ¶11.)

On January 5, 2010, Plaintiff did not receive any portion of his post op prescribed medications. (ECF No. 245 ¶16.) Plaintiff did not receive Tylenol 3 until January 6, 2010, eight days after surgery (see P.E. 69 at p.2 of 2). (Id.; P's Decl., ECF No. 246 ¶9.) Prison doctor Metts had to order Tylenol 3 on January 4, 2010 (P.E. 69) specifically because Plaintiff did not receive any post surgery pain meds. (ECF No. 245 ¶16.) Plaintiff did not receive his prescribed antibiotics until January 3, 2010. (Id.) On December 31, 2009, Plaintiff did not receive cephalexin, tucks briefs, Motrin, or Tylenol 3 as part of his post op discharge. (Id. at ¶17.) Plaintiff received these prior to discharge – once, but never received the tucks briefs. (Id.; P's Decl., ECF No. 246 ¶8.)

Plaintiff did complain of post-op injuries at his January 7, 2010 follow up appointment. (Id. at ¶18.) The problem is it fell on deaf ears. (Id.) When an inmate has two ducats scheduled at the same time or needs to cancel an appointment, he must fill out a refusal form. (Id.) Common practice is for the corrections officer on duty to hand the inmate a form, but since he is not qualified to evaluate medical complaints, he ignores the complainee. (Id.; P's Decl., ECF No. 246 ¶10.)

Plaintiff did complain of exacerbated post op issues at a Jan. 13, 2010 follow up appointment with Dr. Parvez, specifically expressing he was bleeding from the rectum and constipated, which the doctor noted (see P.E. 72). (ECF No. 245 at ¶19; P's Decl. ¶11.) The doctor also noted there was a stitch hanging loose. (Id.) Dr. Parvez clipped the stitch after he ripped a fissure into Plaintiff's anus by yanking hard on the uncut stitch. (P's Decl. ¶11.) Dr. Parvez's report states, "the patient's stool is still hard" fourteen days after surgery, stemming from the delay of receiving his prescribed constipation medications. (Id. ¶13.)

On Feb. 3, 2010, Plaintiff did present with complaints to Dr. Parvez about continued bleeding which the doctor noted (see P.E. 79[9]) and Plaintiff did not have "healed rectal tissue" as Defendants claim. (ECF No. 245 ¶20.) Dr. Parvez noted under impression: "Healing," which shows that Plaintiff had not yet "healed" (see P.E. 79[13]). (Id.) Plaintiff was suffering

from gastrointestinal bleeding (P.E. 65) which was inside his rectum. (P's Decl. ¶12.) Dr. Parvez and many other doctors noted this fissure and recommended surgery to repair it (P.E. 142). (Id.) Plaintiff's surgical clinics mentioned he continued to bleed from the rectum (P.E. 72[6], 78[5], 79, 93, 101) and blood tests showed anemia from loss of blood (P.E. 102[24]). Bakersfield Hospital's intake reported, "Impression: severe anemia secondary to chronic blood loss due to rectal bleeding." (Id. ¶14.)

Plaintiff also suffered from constipation and did not receive any constipation countering medication (mineral oil or Motrin which does not constipate (P.E. 1) – yet only received medications that cause constipation, like Tylenol 3, and his constipation was so severe that with each bowel movement he suffered excruciating pain with excessive bleeding so bad he had to be rushed to Bakersfield Hospital's E.R on February 19, 2010 for blood transfusions (P.E. 102). (P's Decl. ¶13.) Plaintiff's untreated constipation caused him to bleed out at every bowel movement, which was documented by Dr. Parvez at P.E. 70[10]. (Id.)

The pain and bleeding that Plaintiff suffered from on January 2, 2010 is not expected given the type of surgery Plaintiff had; in fact, the hospital discharge instructions (P.E. 63) at #5 specifically warns that if increased bleeding or pain are exhibited to call the physician's office or the emergency room. (ECF No. 245 ¶21.) These warnings would not have been given if pain and bleeding are expected. (Id.) The Defendants' statement does show they believe that Plaintiff suffered pain and bleeding. (Id.) As for Plaintiff's discomfort, Dr. Metts had to re-order Tylenol 3 (P.E. 69) for pain because the prison refused to follow the hospital doctor's prescriptions. (P's Decl. ¶14.) Dr. Metts also had to re-prescribe Tucks adult briefs on December 31, 2009 (p.2[18] of Decl. of Ugwueze) because of excessive anal bleeding, although Plaintiff did not receive them. (Id.)

In Plaintiff's case, the medications were in the clinic (P.E. 201[13]); they were just not passed out. (Id. ¶15.) Dr. Ugwueze's opinion was that the delay in Plaintiff receiving his prescription was due to a weekend or public holiday (P.3[10] of Decl. Of G. Ugwueze); however, this is incorrect because the medications you receive post surgery are filled no matter if it's a

///

holiday or weekend. (Id.) To not do so would violate the standard of care and open the prison up to numerous lawsuits. (Id.)

Dr. Ugwueze may not have seen any adjustment in post op care that would indicate any damage sustained in the recovery process (p.3[13] Decl. of Ugwueze), but other doctors did. (Id. ¶16.) Dr. Metts was forced to reorder Tylenol 3 (P.E. 69) and tucks briefs to soak up the blood due to Plaintiff's anal bleeding because the prison does not honor hospital prescriptions, which is the reason Plaintiff had to file an inmate 602 #10040 on January 2, 2010 (P.E. 62) asking why we don't receive hospital ordered medications. (Id.) When Dr. Parvez had to prescribe milk of magnesia to go along with the Colace Plaintiff was already on for constipation two weeks after surgery (P.E. 72), this is an adjustment in post op care. (Id.) Also, Plaintiff's emergency blood transfusions due to excessive blood loss can be attributed to Plaintiff not receiving prescribed medications, and Bakersfield Hospital's admission records indicate this damage was sustained in the recovery process. (Id.)

Resolution of acute pain following a hemorrhoidectomy may take several days to a few weeks. (Ugwueze Decl. ¶ 8.) The Defendants are incorrect to assert the process of healing the surgical wound and modeling of the wound to restore tissue can take months. (ECF No. 245 ¶23.) If this were true, why would their own defense expert, Dr. Ugwueze, refute this by asserting on P.2 at #7(h) the tissue healed well from the hemorrhoidectomy on Feb. 3, 2010? (Id.)

Dasenbrock's treatment records reflect that he <u>did not</u> recover under the acceptable recovery time for hemorrhoids. (Id. at ¶24.) In fact, the medical record is replete with examples of Plaintiff's continued bleeding, so bad he had to be rushed to Bakersfield Hospital's E.R. for a blood transfusion (see P.E. 65, 102), and another colonoscopy (P.E. 105) that found some internal hemorrhoids and diverticulosis – from February 19 to 23, 2010. (Id.) In addition, P.E. 77 on April 27, 2011 documents a referral for services for another colonoscopy; P.E. 64 on July 7, 2011 is an RFS for surgery; P.E. 122 (DEFS0221) on April 18, 2010 the doctor's assessment: diagnosis at 1. s/p severe rectal bleeding, 2. Anemia; P.E. 123 (DEFS0219) on May 17, 2010 the doctor documents assessment: diagnosis at #3. Rectal

bleeding fissure; and P.E. 142 on May 4, 2011 Dr. Parvez, the same doctor who performed the first hemorrhoidectomy five months prior, documented "local examination reveals one anal fissure and after that an anal fistula also" and recommends: "the patient is to have surgery which would include: 1. Flexible sigmoidoscopy, 2. anal fistulectomy with removal of fissure, 3. Possible internal hemorrhoidectomy. (<u>Id.</u>)

On August 21, 2013, Plaintiff obtained a declaration from inmate witness Shawn Burton CDC# T-81318, who was witness to these events concerning Defendant Perez and Nurse Adair and have been included as P.E. 194. (P's Decl., ECF No. 246 ¶17.) On April 28, 2014, Plaintiff obtained a declaration from inmate Collin Walsh CDC# V82646, who was Plaintiff's roommate during the events and witnessed Plaintiff's pain and suffering, especially on February 2, 2010 and February 12, 2010. (<u>Id.</u> ¶18.)

Plaintiff's Government Claim was sent on February 12, 2011 which is a filing date. (ECF No. 245 ¶25.) Dasenbrock's Government Claim 596404 was received by the Board on April 6, 2011. (D's Request for Judicial Notice (RJN), ECF No. 231, Ex. A at p. 4.)

## VI. PRELIMINARY MATTERS

### A. <u>Judicial Notice</u>

"Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)). "Facts are indisputable, and thus subject to judicial notice, only if they either 'generally known' . . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]" <u>Id.</u> at 909.

The Court may take judicial notice of records and reports of administrative bodies, including California's Victim Compensation and Government Claims Board (VCGCB). <u>See</u> Fed. R. Evid. 201(b); <u>Marsh v. San Diego Cnty.</u>, 432 F.Supp.2d 1035, 1043–44 (S.D.Cal. 2006); <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) ("[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is

unquestioned." (citations and internal quotation marks omitted)). A court may also take judicial notice of the contents of public records. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).

        1.    <u>**Defendant's Request for Judicial Notice (ECF No. 231.)**</u>

On May 8, 2017, Defendant Perez requested the court to take judicial notice under Federal Rule of Evidence 201(b)(2) of records of Plaintiff's Government Tort Claim No. G-596404, submitted by Plaintiff pertaining to the allegations in this case and rejected by the VCGCB on May 19, 2011. (ECF No. 231, Exh. A.) On June 5, 2017, Plaintiff opposed this request. (ECF No. 241.)

Plaintiff opposes the request on the grounds that he has substantially complied with the requirements of the California Tort Claims Act because his harm is ongoing and the date of discovery, not the date of injury, determines the deadline for filing a claim. Plaintiff does not, however, question the authenticity of the records of his claim.

To the extent that Defendant is requesting that the Court take judicial notice of the contents of Plaintiff's Government Tort Claim, Defendant's request should be granted because (1) Plaintiff's Second Amended Complaint explicitly refers to the documents in question at ECF No. 140, pages 2 ("Board of Claim also rejected on 5-29-2011") and 7 ("Government Claims Board Response: Denied 5-19-11"); (2) such documents are central to Plaintiff's claims as the timely filing and subsequent rejection of government tort claims is a prerequisite to the filing of a civil complaint; and (3) Plaintiff does not question the authenticity of such documents. However, to the extent that Defendant requests the Court to take judicial notice of the truth of the factual allegations contained therein, such request should be denied. <u>See</u> <u>Lee</u>, 250 F.3d at 689 ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), overruled on other grounds by <u>Galbraith v. Cty. of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002).

Accordingly, Defendant's request for judicial notice of the contents of Plaintiff's Tort Claim No. G-596404 should be granted.

## 2.    **Plaintiff's Request for Judicial Notice (ECF No. 276.)**

On November 15, 2017, Plaintiff requested the Court to take judicial notice of the Office of the Inspector General's Medical Inspection Results concerning SATF prison dated May 2010.  (ECF No. 276.)  On November 16, 2017, Defendant Page filed objections to the request.  (ECF No. 277.)  On November 16, 2017, Defendants Enenmoh and Perez filed a motion to strike Plaintiff's request as an impermissible surreply.  (ECF No. 278.)   On November 27, 2017, Plaintiff filed an opposition to the motion to strike.  (ECF No. 279.)

Plaintiff requests the Court take judicial notice of the Office of the Inspector General's (OIG's) final report on its inspection of medical care delivery at the California Substance Abuse Treatment Facility and Prison, Corcoran (SATF), dated May 2010, which Plaintiff has attached to his request for the Court's review.  (Request for Judicial Notice, ECF No. 276, Exhibit.)  Plaintiff submits the report as expert opinion evidence in support of his opposition to all of the Defendants' pending motions for summary judgment,[8] specifically to refute Defendants' expert's opinions about whether the appropriate standard of care was provided to Plaintiff at SATF during the medical treatment at issue in this case.

Defendant Page[9] objects to Plaintiff's request for judicial notice on the following grounds:  1) The request is not timely filed because the deadline to file papers in opposition to Defendant Page's motion for summary judgment has long since passed; 2) Plaintiff cannot establish that he could not have reasonably discovered the report until now; 3) The request (not including the report) violates the Court's 25-page limit for the opposition brief that Plaintiff was authorized to file; 4) the court may not take judicial notice of the contents of the report because it is not the type of document about which there can be no reasonable dispute; and 5)

---

[8] Now pending in this case are four motions for summary judgment brought by individual Defendants: (1) by Defendant Adair, filed on April 14, 2017 (ECF No. 224); (2) by Defendant Perez, filed on May 8, 2017 (ECF No. 230) ; (3) by Defendant Enenmoh, filed on May 9, 2017 (ECF No. 232) ; and (4) by Defendant Page, filed on May 12, 2017  (ECF No. 234).

[9] Plaintiff filed the request for judicial notice of the OIG Report to be used in all four of the Defendants' motions for summary judgment.  Therefore, although this order primarily addresses Defendant Perez's motion for summary judgment, Defendant Page's objections and Defendant Enenmoh's motion to strike are also discussed because they were filed in response to Plaintiff's request.

The report is irrelevant because the statistics on an institution-wide basis have no bearing on whether Nurse Page met the standard of care with respect to the specific incident at issue in this case.

Defendants Enenmoh and Perez move to strike Plaintiff's request as an impermissible surreply, because despite being submitted as a request for judicial notice, Plaintiff's request contains legal argument. Defendants assert that Plaintiff does not have the right to file a surreply, and their motions for summary judgment were deemed submitted when the time to reply had expired. Defendants also argue that Plaintiff has not shown how the investigation by the Inspector General, which is the subject of the report, is pertinent to how Defendants Enenmoh or Perez were negligent or deliberately indifferent to Plaintiff's medical needs.

Plaintiff contends that his request is not a surreply but instead a request for judicial notice of newly discovered evidence to assist the court with making a fully informed decision concerning the standard of care being provided to Plaintiff. Plaintiff also seeks to place Defendant Enenmoh on notice of these records which are simply "scientific, technical, or other specialized knowledge" by a qualified expert that will "assist the trier of fact to understand the evidence." (ECF No. 279 at 1.) Plaintiff argues that the report is a public record with facts not reasonably in dispute, which is subject to judicial notice. Plaintiff also argues that the investigation in the report is pertinent to the matters of this lawsuit because Defendant Enenmoh was the Chief Medical Officer at SATF during the time the investigation was conducted.

**Discussion**

Defendant Page's objection to plaintiff's request on the ground that the facts in the OIG's report are subject to reasonable dispute is well-taken and sustained. The OIG's report is an investigative report about the standard of medical care at SATF and sets forth statistics and other results of the OIG's investigation. While the report of the OIG is a public record whose authenticity is not in dispute, the information included in the report is not the type of evidence that is subject to judicial notice under Federal Rule of Evidence 201. The facts in the report are not generally known or capable of accurate and ready determination by resort to sources whose

accuracy cannot be questioned. Thus, the court may take judicial notice of the fact that such a report was published by the OIG, but not of the facts included within the report.

Plaintiff's request for judicial notice should be denied as untimely. <u>Jarritos, Inc. v. Reyes</u>, 2009 WL 2487066, 345 Fed.Appx. 215 (9th Cir. 2009) (District court acted within its discretion in excluding plaintiff's late-filed expert reports, even though expert reports were central to plaintiff's case and their exclusion was highly prejudicial, where plaintiff did not produce its reports until between two and twenty-eight days after deadlines for disclosing experts had passed). The deadlines for Plaintiff to submit material in opposition to Defendants' motions for summary judgment expired in May, July, and September 2017, between twenty-four and one hundred twenty-two days before Plaintiff filed the request for judicial notice. (<u>See</u> ECF Nos. 239, 260, 265.) Moreover, the court has examined the OIG's report and finds that it would not assist the court in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702. Therefore, Plaintiff's request for judicial notice should be denied, and Defendants Enenmoh's and Perez's motion to strike should be denied as moot.

**B.**   <u>**Evidentiary Matters**</u>

**1.**   <u>**Plaintiff's Objection**</u>

Plaintiff objects to Defendant Perez's use of Dr. Ugwueze as an expert witness on the ground that Dr. Ugwueze's declaration violates CDCR Protocol P. 1-6-2 (VII) ("a reviewer shall not review health care or make recommendations if the reviewer is primarily responsible for developing or executing the inmate/patients treatment plan or has any other conflict of interest"). (ECF No. 246 ¶6.) Plaintiff argues that a conflict of interest exists because Dr. Ugwueze has a vested interest in protecting his fellow medical officers and the institution where he works, that Dr. Ugwueze has an interest in saving the state money in this lawsuit, in reflecting that Plaintiff's care was in compliance with state and federal constitutional standards, and in protecting the other medical employees named in this suit. (<u>Id.</u>) Plaintiff also argues that because Dr. Ugwueze is a doctor, not a lawyer, he cannot properly address whether Defendant Perez was negligent or deliberately indifferent; these issues are for a judge or jury to

///

decide. (Id. ¶7.) Plaintiff requests the court to discount Dr. Ugwueze's declaration due to these conflicts.

The court relies on Federal Rules of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The Supreme Court requires the trial court to act as a gatekeeper to insure that expert testimony is reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786 (1993). "[U]nlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation." Id. Because of this latitude, the "trial judge must determine at the outset, pursuant to [Federal Rule of Evidence] 104(a), whether . . . the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology can properly be applied to the facts in issue." Id. at 592–93. The burden rests upon the party seeking to present the expert testimony to establish admissibility by a preponderance of the evidence. Id. "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104.

Plaintiff has not contested Dr. Ugwueze's credentials as an expert. Dr. Ugwueze testified as to his qualifications as follows:

> I am a physician licensed by the State of California and employed by the California Department of Corrections (CDCR). I currently work at the Substance Abuse Treatment Facility (SATF) in Corcoran, California as the Chief Medical Executive (CME). I earned my medical degree from the University of Nigeria in 1984. I completed my residency in the United States in Internal Medicine. I began working for CDCR in 2007. I became the CME in 2013. As a CME, my regular duties include the following: evaluating medical care issues, reviewing medical records and medical care processes, maintaining quality and utilization, diagnosing inmate complaints, coordinating specialty care, and providing direct medical care. As a CME, I have access to the Unit Health Record (UHR) for each of the inmates housed at SATF.

(Decl. of Ugwueze, ECF No. 230-5 at 1-2.)  Instead, Plaintiff questions whether Dr. Ugwueze is biased in his opinions about Plaintiff's medical care because he is Defendant's witness and works at SATF with other medical providers.

Plaintiff only offers speculation that Dr. Ugwueze is biased against him.  Moreover, even if Plaintiff had evidence of Dr. Ugwueze's bias, the court may not make credibility determinations or weigh conflicting evidence in judging the evidence at the summary judgment stage.  Soremekun, 509 F.3d at 984.  At this stage of the proceedings, the court determines only whether there is a genuine issue for trial.  Thomas, 611 F.3d at 1150.  "Assessing the potential bias of an expert witness, as distinguished from his or her specialized training or knowledge or the validity of the scientific underpinning for the expert's opinion, is a task that is 'properly left to the jury.'"  Donahoe v. Arpaio, No. CV10-02756-PHX-NVW, 2013 WL 5604349, at *10 (D. Ariz. Oct. 11, 2013) (quoting Cruz–Vazquez v. Mennonite Gen. Hosp., Inc., No. 09–1758, 2010 WL 2898251, at *59 (1st Cir. July 26, 2010)).  Dr. Ugwueze's alleged bias does not present an appropriate basis upon which to exclude his testimony altogether.  See United States v. Thompson, No. 05-50801, 2007 WL 2044725, at *2 (9th Cir. July 16, 2007) ("[A]s a general rule, bias is not a permissible reason for the exclusion of expert testimony." (citing United States v. Abonce–Barrera, 257 F.3d 959, 965 (9th Cir. 2001))); In re Toys "R" Us—Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig., No. CV 06-08163 MMM FMOX, 2010 WL 5071073, at *11 (C.D. Cal. Aug. 17, 2010) ("An expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination.") (internal quotation marks and modifications omitted)); 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence, § 702.06[8] (2d ed. 2000) ("There is no requirement under Rule 702 than an expert witness be unbiased. Few people are.").[2]

With respect to Plaintiff's argument that because Dr. Ugwueze is a doctor and not a lawyer, he cannot properly address whether Defendant Perez was negligent or deliberately indifferent, Rule 704 provides, in pertinent part: "testimony [by an expert] in the form of an opinion or inference otherwise admissible is not objectionable [in a civil case] because it embraces an ultimate issue to be decided by the trier of fact."  Therefore, there is no basis to

exclude Dr. Ugwueze's opinion that Defendant Perez was not negligent or deliberately indifferent.

Accordingly, in light of the foregoing, Plaintiff's objection to Dr. Ugwueze's expert testimony should be overruled.

## VII.    PLAINTIFF'S CLAIMS – LEGAL STANDARDS

### A.    <u>Eighth Amendment Medical Care Claim</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); <u>Rhodes</u>, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference is shown by "(a) a purposeful act or failure

to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted), Wilhelm, 680 F.3d at 1122. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997), (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

 "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

 "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . .

///

and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

### B. State-law Negligence

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

## VIII. FINDINGS

### A. Eighth Amendment Medical Claim

#### 1. Plaintiff's Damages

Under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Oliver, 289 F.3d at 630.

Defendant Perez argues that Plaintiff suffered no damages as a result of Defendant Perez's lawful order for Plaintiff to return to his cell on January 2, 2010, at the conclusion of his visit with medical staff, without receiving certain medication. Defendant argues that the undisputed evidence reflects that Plaintiff suffered no harm in his post-op recovery from the hemorrhoidectomy. (Ugwueze Decl. ¶8.) Defendant asserts that there are no treatment records

soon after January 2, 2010, that reflect any physical complications in Plaintiff's recovery. Defendant's expert witness, Dr. Ugwueze, a medical doctor at SATF, stated his opinion after reviewing Plaintiff's Unit Health Record (UHR) at SATF following Plaintiff's return from the hospital after his hemorrhoidectomy:

> The pain and bleeding that Plaintiff suffered from on January 2, 2010, is expected following the type of surgery he had. Resolution of acute pain following hemorrhoidectomy may take several days to a couple of weeks. The process of healing the surgical wound and remodeling of the wound to restore the tissues to normal can take months. If there were complications in the healing process, I would expect to see records noting continued swelling, excessive bleeding, discomfort, and other anal discharges. Notably, no records corroborating these issues were present. I did not see any adjustments in post-op care that would indicate any damage sustained in the recovery process. I found nothing in Dasenbrock's UHR [Unit Health Record] from January or February 2010 to corroborate his claims of deliberate indifference of negligence to post-op treatment.

(Ugwueze Decl. ¶¶8, 10, 12, 13.)

In opposition, Plaintiff argues that he did not recover under the acceptable recovery time for hemorrhoids; he did sustain injury between January 2, 2010 and February 3, 2010 as a result of the delay in receiving his medications; and he did complain of post-op injuries at his follow up appointments. As evidence, Plaintiff offers his declarations and medical records.

Plaintiff's hemorrhoidectomy surgery was performed on December 30, 2009. Plaintiff declares that on January 2, 2010, he had not had a good bowel movement in three days and was bleeding from the rectum, causing him to suffer pain serious enough that he was later prescribed Tylenol 3, an opiate. (ECF No. 245 at ¶¶15(a), (b), (c); P.E. 62 Exh. G; P.E. 69.) The hospital discharge instructions (P.E. 63) at #5 specifically warned that if increased bleeding or pain were exhibited to call physician's office or the emergency room. (Id. at ¶21.) Plaintiff contends that these warnings would not have been given if pain and bleeding were expected. (Id.) On January 13, 2010, he still had bleeding and was suffering from constipation. (ECF No. 245 at ¶15(d); P.E. 72.) On February 2, 2010, he submitted a 7362 form to SATF medical documenting his complaints of shortness of breath and dizziness (Plaintiff was on Chronic Care for his heart). (Id. at ¶15(e); P.E. 87.) Dr. Metts told Plaintiff on that severe loss of blood can bring about these symptoms. (Id. at 15(e); see P. 57[6] of

Plaintiff's complaint). On Feb. 3, 2010, Plaintiff complained to Dr. Parvez about continued bleeding which the doctor noted. (ECF No 245 ¶20; see P.E. 79[9].) Plaintiff argues that he did not have "healed rectal tissue" as Defendants claim. (Id.) Dr. Parvez noted under impression: "Healing," which shows that Plaintiff had not yet "healed." (Id.; see P.E. 79[13.]) Plaintiff was suffering from gastrointestinal bleeding which was inside his rectum. (P's Decl. ¶12; P.E. 65.) Dr. Parvez and many other doctors noted this fissure and recommended surgery to repair it. (Id.; P.E. 142.) On February 19, 2010, because of severe constipation causing excruciating pain, excessive bleeding, and anemia, Plaintiff was rushed to Bakersfield Hospital's E.R. for blood transfusions (P.E. 102). (P's Decl. ¶13.) On April 18, 2010, the doctor diagnosed severe rectal bleeding and anemia. (Id.; P.E. 123.) On May 4, 2011, Dr. Parvez, the same doctor who performed the first hemorrhoidectomy five months prior, documented an anal fissure and anal fistula and recommended further surgery for Plaintiff. (Id.)

Plaintiff claims that his post op care records indicate that he suffered damages during the recovery process. Dr. Metts was forced to reorder Tylenol 3 (P.E. 69) and tucks briefs to soak up the blood due to Plaintiff's anal bleeding. (Id.) Dr. Parvez had to prescribe milk of magnesia to go along with the Colace Plaintiff was already taking for constipation two weeks after surgery (Id.; P.E. 72). Plaintiff also contends that his emergency blood transfusion can be attributed to Plaintiff not receiving prescribed medication. (Id.)

**Discussion**

Defendant's argument, that under § 1997e Plaintiff cannot bring a claim for damages because Plaintiff suffered no harm in his post-op recovery fails. Plaintiff has alleged that during his post-op recovery, he suffered from severe constipation causing him excruciating pain, excessive bleeding, and anemia, resulting in Plaintiff being rushed to the hospital emergency room for blood transfusions. The court finds this alleged injury to be a physical injury that is more than *de minimus*. Therefore, Plaintiff is not precluded under § 1997e from proceeding with a damages claim.

///

///

## 2.    **Objective Element – Existence of Serious Medical Need**

A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059.  Indications of a serious medical need are (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and/or (3) the existence of chronic or substantial pain. Snow, 681 F.3d at 982-85 (objectively serious medical need existed where prisoner who needed double hip replacement surgery endured a years-long delay and his degenerated condition caused him excruciating pain and rendered him barely able to walk); Wilhelm, 680 F.3d at 1122 (hernia constituted objectively serious medical need where it caused the prisoner pain and he endured an approximately 4 year delay before receiving necessary surgery); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (objectively serious medical need existed where prisoner's broken jaw was wired shut for months, affecting his ability to eat and likely causing him pain) (quotation marks omitted); see also McGuckin, 974 F.2d at 1059-62 (objectively serious medical need existed where prisoner endured a more than 3 ½ year delay in receiving back surgery for "dramatic" condition "constituting massive herniation" of inmate's back and upper torso, which caused inmate extreme, increasing pain which was successfully treated by the surgery); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989) (objectively serious medical need existed where prisoner went more than 3 months without his dentures, resulting in severe pain, bleeding gums, broken and permanently damaged teeth, and weight loss due to inability to eat properly); Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (no objectively serious medical need where prisoner suffered from nausea, shakes, headache, and depressed appetite due to unresolved family stress).

### Discussion

The parties do not dispute that Plaintiff had a serious medical need when he approached the medical clinic window on January 2, 2010.  The court concurs.  Plaintiff alleged in the SAC that on January 2, 2010, he was just out of surgery, in severe pain, had not had a bowel movement in three days, and was bleeding profusely from the rectum.  (SAC, ECF No. 140 at

19:11, 28:26-29:1.)  Plaintiff's report of severe pain, profuse bleeding, and constipation are facts within a lay witness' perception and do not require medical expertise, Fed. R. Evid. 701, and these symptoms would significantly affect an individual's daily activities.  Thus, Plaintiff's pain and medical condition demonstrate a "serious medical need" under the applicable definition, and the unnecessary continuation of his condition and pain would cause him "harm" upon which a § 1983 claim can be based.  McGuckin, 974 F.2d at 1062.  Therefore, Plaintiff has satisfied the objective element of his deliberate indifference claim.

### 3.  Subjective Element – Deliberate Indifference

The court finds no evidence that Defendant Perez was deliberately indifferent when he ordered Plaintiff to leave the A-L treatment window on January 2, 2010, even if Plaintiff was forced to leave the medical clinic before receiving his pick-up medication or being referred for further medical treatment.

Defendant Perez acknowledges that he was on duty on January 2, 2010 during third watch, working as a Health Care Access Officer on Facility E, but that he does not recall his or Nurse Adair's interactions with Plaintiff on that date.  (Perez Decl., ECF No 230-6 ¶¶4, 6, 7.)  Nonetheless, Defendant does not dispute Plaintiff's account that on January 2, 2010, Defendant ordered him to leave the treatment window at the conclusion of his visit and instructed Plaintiff that he would receive an RVR if he did not leave the facility.  (Defendant's Undisputed Facts 12 &13; SAC, ECF No. 140 at 19.)

There is no evidence that Defendant knew that Plaintiff was at substantial risk of serious harm if Defendant sent him away.  Plaintiff's assertion that Defendant knew he was just out of surgery the day before, or that he told Defendant about his symptoms on January 2, 2010, without more, does not prove that Defendant had the requisite state of mind.  (ECF No. 140 at 109.)  As discussed above, under the applicable standard, a prison official must not only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."  Toguchi, 391 F.3d at 1060.  There is no evidence that Defendant drew the inference that Plaintiff was at substantial risk of serious harm.  If Defendant should have drawn the inference but did not, this does not show

deliberate indifference. Such conduct would, at most, show that Defendant was negligent. Plaintiff's "circumstantial evidence" that Defendant knew about a risk of harm or that a risk of harm was "obvious," is not persuasive. (ECF No. 242 at 11, 14, 15, 20.)

Plaintiff offers inmate Shawn Burton's account of the events at issue.

> On the afternoon of Jan. 2, 2010 I was standing in the medication pick up line on E yard at SATF with inmate "Butch" Dasenbrock. I observed inmate Dasenbrock approach the medication window at E clinic and overheard him being told by the nurse he had no meds. I heard Dasenbrock say he was on the medication pickup list, so he must have meds. He also said he was just out of surgery. The nurse then became angry and yelled at Dasenbrock to get away from the window. I heard Dasenbrock say there was something wrong, he was bleeding from the rectum and he wanted to see a doctor. Correctional Officer Perez then yelled at Dasenbrock from inside the E Clinic and ordered him to leave medical or he would receive a 115. Inmate Dasenbrock replied that he was bleeding from the rectum and just out of surgery. He said he wanted to go to CTC or see a doctor. C/O Perez again yelled at Dasenbrock to leave the window and said he would be given a 115.

(Burton Decl., ECF No. 242 at 116-17.) While inmate Burton's declaration supports Plaintiff's assertion that he told Defendant about his symptoms, Burton provides no evidence that Defendant drew the inference that Plaintiff was at a substantial risk of serious harm.

Defendant's evidence shows that it was outside the scope of Defendant's duties to diagnose Plaintiff or participate in the administration of medical treatment. (Perez Decl. ¶7.) Defendant Perez declares:

> On January 2, 2010, during third watch, which runs from 1430 hours to 2230 hours, I was working as a Health Care Access Officer on Facility E. I had a wide range of duties. Those duties included, but were not limited, ensuring inmates who were ducated to the clinic were seen by staff, assisting with access to medical appointments, and maintaining security within the facility. Inmates within the medical facility are under my supervision while they wait in line for treatment. Inmates waiting for medical treatment are instructed to line up in order to access the treatment window. The treatment window may provide medications or referrals for more thorough review of an inmate's symptoms. A Health Care Access Officer cannot prescribe medication or diagnose further treatment. If the inmate believes he has not received adequate medical treatment, he must submit a CDCR Form 7362 healthcare request. I do not recall ordering Dasenbrock to leave the treatment window on January 2, 2010. Common practice is to the officer present to investigate the circumstances of the interaction between the inmate and staff. If the inmate has received the treatment available, or in this case, has ascertained that his treatment is not yet available, I would order the inmate to leave the window and return to his housing unit. Inmates who refuse to comply with a direct order risk receiving a CDCR 115 Rules Violation Report.

(Perez Decl. ¶¶4-6.) Under this job description, it would have been reasonable and lawful under the circumstances for Defendant to order Plaintiff away from the window and warn him about the possibility of an RVR. Defendant had no duty to interfere with medical care, and Nurse Adair had already told Plaintiff that his medication was not available.

Plaintiff argues that contrary to Defendant Perez's declaration, an inmate needing emergency care is not required to fill out a 7362 Form, and that Defendant was obligated to find Plaintiff medical care because it was an emergency. As evidence of Defendant's obligation, Plaintiff submits a copy of CDC's "Overview of Health Care Services," which provides:

> Health care may be accessed through the written process by filling out the CDC Form 7362, Health Care Services Request, or through the Sick Call Process of the Chronic Care Program. If custody staff become aware, by any means, that an inmate needs immediate health care services, they shall contact health care staff for direction" . . . Health care services are available to CEC inmate/patients at all times." . . . and "Registered Nurses (RNs) are onsite . . . to respond to urgent and emergent outpatient needs 24 hours a day, seven days a week." (ECF 248-1 at 79.)[10]

Plaintiff asserts that Defendant Perez admitted he was aware of this policy (ECF 246 at 2 ¶2) and knew that Plaintiff's medications were available for pick-up at the treatment window on January 2, 2010; however, the court finds no evidence supporting these assertions. In any event, Defendant was not obligated to respond to a need for emergency medical care if he did not know there was an emergency.

Plaintiff argues that Defendant acted with deliberate indifference because he shouted angrily, refused to help Plaintiff obtain medications or examine Plaintiff, threatened to write Plaintiff up, and made jokes about Plaintiff's symptoms that caused Plaintiff emotional distress. (ECF No. 140 at 29, 113; ECF No. 242 at 20.) However, these acts, without more, are not evidence that Defendant was aware of a substantial risk of harm to Plaintiff. Therefore, Plaintiff has not established that Defendant acted against him with deliberate indifference.

///

---

[10] This document, "Overview of Health Care Services," is not properly authenticated and there is no evidence that it reflects the current policy followed in 2010.

### 3. **Injury and Damages**

Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show the delay caused significant harm, and that the defendants should have known such harm would occur. Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2008). Defendant argues that Plaintiff cannot demonstrate that the delay in his medication led to further harm to Plaintiff, or that Plaintiff suffered damages as a result of lawful conduct by Defendant Perez.

Defendant's expert witness, Dr. Ugwueze, Chief Medical Executive at SATF, concluded that Plaintiff healed from the surgery within the recommended timeframe and resumed normal daily activities:

> I have been asked by defense counsel to review Dasenbrock's treatment records from December 2009 to February 2010, to determine if there are any injuries stemming from the alleged deliberate indifference or negligence by Perez-Hernandez. In reviewing Dasenbrock's UHR following his return from his return from the hospital after his hemorrhoidectomy, I found and relied upon the following when making my conclusion:
>
> a) Dasenbrock's hemorrhoidectomy was performed on December 30, 2009.
>
> b) On December 31, 2009, Dasenbrock received Motrin and Tylenol No. 3 to treat his pain.
>
> c) Dasenbrock received an antibiotic, Cephalexin on December 31, 2009.
>
> d) Dr. Metts prescribed Tucks adult briefs on December 31, 2009.
>
> e) On January 5, 2010, Plaintiff received Tylenol No. 3 for pain.
>
> f) On January 7, 2010, Plaintiff refused treatment while making no mention of exacerbated symptoms stemming from a delay in access to a prescription.
>
> g) At a January 13, 2010 follow-up appointment, Plaintiff did not complain of exacerbated hemorrhoids issues, and still suffered from occasional rectal bleeding. Dasenbrock was encouraged to increase his water intake from sixteen ounces daily.
>
> h) On February 3, 2010, Dasenbrock presented with no complaints and minimal swelling to the rectal area. The tissue healed well from the hemorrhoidectomy.
>
> The pain and bleeding that Plaintiff suffered from on January 2, 2010, is expected following the type of surgery he had. . . I did not see any complications in healing stemming from the alleged delay of medication on January 2, 2010. If there were complications in the healing process, I would expect to see records

noting continued swelling and excessive bleeding, discomfort, and other anal discharges. Notably, no records corroborating these issues were present. . . I did not see any adjustments in post-op care that would indicate any damage sustained in the recovery process. . . I found nothing in Dasenbrock's UHR [Unit Health Record] from January or February 2010 to corroborate his claims of deliberate indifference or negligence to post-op treatment.

(Ugwueze Decl., ECF No. 230-5 ¶¶6-13.)

Plaintiff argues that Dr. Ugwueze's facts are not entirely accurate and Plaintiff did not receive the medications on the dates asserted. However, even if Plaintiff disputes the dates used by Dr. Ugwueze, Plaintiff cannot show that he suffered harm because of delays in receiving his medications. Plaintiff is not qualified to express a medical opinion about whether he recovered within an acceptable recovery time or whether he suffered symptoms during the post op time period that are attributable to the fact that Defendant Perez forced him to leave the clinic without his medication and without being checked into the medical clinic for further evaluation. Fed. R. Evid. 701. Therefore, Plaintiff has not submitted admissible evidence establishing that he had any setbacks during his recovery or that he suffered lasting effects resulting from Defendant Perez's conduct.

Based on the admissible evidence, the court does not find that any conduct by Defendant Perez on January 2, 2010, that delayed Plaintiff's medical treatment caused him further harm. Defendant has met his burden of setting forth evidence that there is no genuine issue of material fact for trial, which shifts the burden to Plaintiff to submit admissible evidence showing the existence of genuine issues for trial. Plaintiff has not done so.

### 4.    Conclusion

In sum, the record does not support a claim under the Eighth Amendment against defendant Perez based on deliberate indifference to Plaintiff's serious medical needs on January 2, 2010.

### B.    Negligence – State Law Claim

Plaintiff also proceeds with a state-law negligence claim against Defendant Perez based on the allegations in the Second Amended Complaint.

///

///

### 1.    **Supplemental Jurisdiction**

"[A court] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  If the court grants Defendant Perez's motion for summary judgment on Plaintiff's federal claims against him, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims against him.  See Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010).  ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (internal quotation marks and citation omitted)).

### 2.    **California's Government Tort Claims Act**

The Government Claims Act requires that a tort claim for damages against a public entity or its employees be presented to California's Victim Compensation and Government Claims Board ("the board") no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905, 910, 911.2, 950.2, 950.6.  The board has forty-five days to act on a claim, or an application for leave to file a late claim; and absent an extension by agreement, if the board fails to act within forty-five days, the claim is deemed rejected, or the application is deemed denied, on the last day of the prescribed period.  Cal. Gov't Code §§ 911.6, 912.4.  Presentation of a written claim and action on or rejection of the claim by the board are conditions precedent to suit.  Cal. Gov't Code §§ 945.4, 950.6; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239, 90 P.3d 116, 13 Cal.Rptr.3d 534 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  Suit must be commenced not later than six months after the date the written notice is deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); Clarke v. Upton, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010); Baines Pickwick Ltd. v. City of Los Angeles, 72 Cal.App.4th 298, 303 (Cal. Ct. App.

///

1999), and if written notice is not given, suit must be commenced within two years from accrual, Cal. Gov't Code § 945.6; Baines Pickwick Ltd., 72 Cal.App.4th at 303.

Defendant Perez argues that Plaintiff's Government Claim is untimely as to his alleged negligence claim. Defendant asserts that the board did not receive Plaintiff's claim until April 6, 2011. (D's Request for Judicial Notice, ECF No. 231, Exh. A at p. 4.) Upon receipt, the board notified Plaintiff that his claim, with an unspecified date, will only cover tortious conduct dating back six months prior (October 6, 2010) to receipt of his claim. (Id.) Defendant argues that as a result, the alleged misconduct against him—from January 2, 2010, is untimely presented in Claim 596404, and the negligence claims against Defendant Perez should be barred for Plaintiff's failure to comply with the Tort Claims Act.

Plaintiff argues that his claim was timely on April 6, 2011, because he did not discover the harm against him caused by Defendant Perez until December 15, 2010. Plaintiff claims that he believed his pain and bleeding after surgery were normal until after he saw other doctors who documented his pain and bleeding. Plaintiff also argues that under the prison mailbox rule, his claim was filed on February 12, 2011, because that was the date he handed his claim to a corrections officer for mailing.

In this case, the court need not decide whether Plaintiff's claim was submitted timely to the VCGCB, because as discussed below, Plaintiff fails to show that Defendant Perez was negligent when he ordered Plaintiff to leave the medical clinic.

### 3.    California Government Code §§ 845.6, 855.6

Defendant Perez argues that he is not liable for damages based on negligence because the administration of medical care was outside the scope of Defendant's responsibilities, the undisputed evidence reveals that Perez's orders did not interfere with Plaintiff's access to medical treatment, and Plaintiff cannot provide any evidence showing that Perez knew about his condition or that he was returning from surgery.

California's Government Code § 845.6 states in relevant part:

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but ... a public employee, and the public entity where the

employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care....

Govt. Code § 845.6.

Section 845.6 imposes liability on a public employee and public entity when: (1) the public employee "knows or has reason to know of the need," (2) for a prisoner's "*immediate medical care*," and (3) "fails to take reasonable action to *summon* such medical care." Castaneda v. Dep't of Corrs. & Rehab., 212 Cal. App. 4th 1051, 1070 (2013) (emphasis in original).

There is no evidence that Defendant Perez knew or had reason to know that Plaintiff was in need of immediate medical care when Defendant ordered him away from the A-L window. Plaintiff asserts that he told Defendant about his symptoms – pain, constipation, and bleeding following surgery. Plaintiff also asserts that the day before, he told Defendant that he was just out of surgery and bleeding. Assuming that Defendant heard Plaintiff and understood that Plaintiff had the symptoms he described, there is no reason for Defendant to know that Plaintiff's symptoms were not expected if he had just had surgery. In fact, Plaintiff himself asserts that he thought his symptoms were expected after surgery and did not know at that time that he would suffer damages from Defendant Perez's conduct on January 2, 2010. (ECF No. 242 8-12.)

Furthermore, the court found in its deliberate indifference analysis above that based on the admissible evidence, Defendant Perez's conduct on January 2, 2010 did not cause Plaintiff further harm. Plaintiff cannot succeed on a negligence claim based on Defendant's actions if he did not suffer harm as a result.

Based on the foregoing, the court finds that Defendant Perez has immunity from liability under Government Code § 845.6.

California's Government Code § 855.6 states:

Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental

condition that would constitute a hazard to the health or safety of himself or others.

Govt. Code § 855.6.

Because the Court has already determined that § 845.6 applies here, it need not determine whether § 855.6 would also provide a duplicate source of immunity. However, it appears that it would. In this case, the core of Plaintiff's allegations against Defendant Perez is that he ordered Plaintiff out of the medical clinic without his medication, without examining him or referring him for further medical care. As such, § 855.6 would appear to give Defendant Perez immunity from any failure to examine Plaintiff or refer him for further care.

The court's findings that Defendant Perez did not have reason to know that Plaintiff had urgent medical needs, that it was not within the scope of Defendant Perez's employment to make decisions about Plaintiff's course of medical treatment, that the one-day delay in medical care did not cause further harm to Plaintiff, and that Plaintiff did not suffer damages as a result of Defendant Perez's conduct, cannot be reconciled with a finding that Defendant Perez breached his duty to Plaintiff, causing him harm. Accordingly, Defendant Perez is entitled to judgment on Plaintiff's negligence claim.

## IX.    QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting Reichle v. Howards, 566 U. S. 658, 132 S.Ct. 2088, 2093 (2012). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009). These prongs need not be addressed in any particular order. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

///

///

If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Here, the court finds that Plaintiff has not established a violation of his Eighth Amendment rights. Accordingly, there is no need for further inquiry concerning qualified immunity.

## X.  CONCLUSION AND RECOMMENDATIONS

Defendant Perez has submitted evidence that he did not act with deliberate indifference or negligence when interacting with Plaintiff at the medical window on January 2, 2010, and Plaintiff did not produce any evidence in response that creates a disputed issue of material fact. Accordingly, Defendant is entitled to judgment on Plaintiff's claims against him, and Defendant Perez's motion for summary judgment, filed on May 8, 2017, should be granted.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.  Defendant Perez's motion for summary judgment, filed on May 8, 2017, be GRANTED;

2.  Judgment be entered in favor of Defendant Perez; and

3.  This case proceed only against defendants Dr. A. Enenmoh, Nurse Adair, and Nurse Page, on Plaintiff's claims for violation of the Eighth Amendment and related state-law negligence.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** after the date the objections are filed. The parties are

///
///
///

advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   __December 11, 2017__          _____/s/ Gary S. Austin__
                                          UNITED STATES MAGISTRATE JUDGE