UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN DASENBROCK,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>A. ENENMOH, et al.,<br><br>　　　　Defendants. | 1:11-cv-01884-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT PAGE'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**<br>**(ECF No. 234.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.　　BACKGROUND

Robin Dasenbrock ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 14, 2011. (ECF No. 1.) This case now proceeds with Plaintiff's Second Amended Complaint ("SAC") filed on September 8, 2015, against defendants Dr. A. Enenmoh, Correctional Officer Perez-Hernandez, Nurse Page, and Nurse Laura Adair, on Plaintiff's claims for violation of the Eighth Amendment and related state-law negligence. (ECF No. 140.)

On May 12, 2017, defendant Nurse Page ("Defendant") filed a motion for summary judgment.[1] (ECF No. 234.) On November 1, 2017, Plaintiff filed an opposition to the motion for summary judgment.[2] (ECF No. 268.) On November 8, 2017, Defendant filed a reply to the opposition. (ECF No. 274.) The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion should be granted.

## II. THE COURT'S PRIOR FINDINGS AND RECOMMENDATIONS

Each of the four defendants in this case filed a separate motion for summary judgment. (ECF Nos. 224, 230, 232, 234.) The court entered findings and recommendations addressing two of the four motions. (ECF Nos. 275, 282.) Plaintiff is proceeding with the same two claims against all four Defendants, (1) inadequate medical care under the Eighth Amendment, and (2) related state-law negligence. Plaintiff claims that all four of the defendants failed to provide him with adequate medical care following his hemorrhoidectomy surgery on December 30, 2010.

Due to the similarities in Plaintiff's claims against each defendant, the same legal standards apply to all four of the motions for summary judgment. Therefore, the court need not repeat Plaintiff's background information or the legal standards for screening of the complaint, summary judgment, Eighth Amendment medical claims, state-law negligence, judicial notice, supplemental jurisdiction, California's Government Claims Act, or qualified immunity. The parties are referred back to the findings and recommendations entered on November 15, 2017, and December 12, 2017, if they wish to review the background information and applicable standards. (ECF Nos. 275, 282.) In the present findings and recommendations, the court focuses only on the motion for summary judgment filed by Defendant Page.

---

[1] Concurrently with her motion for summary judgment, Defendant Page served Plaintiff with the requisite notice of the requirements for opposing the motion. <u>Woods v. Carey</u>, 684 F.3d 934, 939-41 (9th Cir. 2012); <u>Rand v. Rowland</u>, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 234-3.)

[2] This was Plaintiff's second opposition. On September 4, 2017, the court granted Defendant Page's motion to strike Plaintiff's first opposition and ordered Plaintiff to file a second opposition not exceeding 25 pages. (ECF No. 264.)

## III. SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT PAGE IN THE SECOND AMENDED COMPLAINT[3]

On February 12, 2010, Nurse Page was working at the E-Yard medical facility at SATF. After Plaintiff complained in writing about his condition, Plaintiff was called to Nurse Page's nurse line and complained about sharp stabbing pains, shortness of breath, dizziness, extreme fatigue, loss of excessive amounts of blood, and anemia. It is Nurse Page's job to evaluate patients and either recommend them to see a doctor in the doctors' line or, if the condition warrants, take them to see a doctor forthwith.

There is an RN Protocol for chest pain that lists specific actions that must be taken when patients complain about chest pain. The RN Protocol instructs nurses to notify a physician immediately when a patient complains of chest pain or other heart symptoms. (Exh. K – RN Protocol.) Nurses are required to fill out an emergency care flow sheet or document any information related to the patient's complaint, obtain past medical history, and refer the patient to a physician or prepare the patient for transfer to an outside facility, on an urgent basis. Nurse Page failed to follow any part of this protocol when Plaintiff presented with symptoms. She would not allow Plaintiff to see a doctor who was eight feet away.

Plaintiff had been on heart medication for fifteen years and chronic care for five years, and he has a documented family history of heart disease that has been in his medical file for ten years. He told Nurse Page this information and also told her that his own father had recently died of heart disease and his mother had open heart surgery for her heart problems. When Nurse Page was told of this, she became angry, looked in Plaintiff's file at a six-month-old blood test, diagnosed Plaintiff as not being anemic or having a family history of heart disease, and told him that high blood pressure is not heart disease. Plaintiff believes that her angry tone of voice and failure to allow Plaintiff to see a doctor indicated she had no legitimate reason for

---

[3] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

her actions and may have been motivated by malice. Nurse Page did nothing for Plaintiff's chest pain except to schedule him to see a doctor in six days. At the time Plaintiff met with Nurse Page, it was not known how severe Plaintiff's condition was because no doctor was alerted to Plaintiff's condition.

Six days passed while Plaintiff suffered further blood loss and heart-related pain. On February 18, 2010, he saw Dr. Metts who noted Plaintiff's family history of heart disease and his fifteen year history in his medical file. A blood test was given to Plaintiff which confirmed severe anemia. On February 19, 2010, Plaintiff was rushed to Bakersfield Hospital's Emergency Room for blood transfusions and further tests. This action may have saved his life because very soon after the blood transfusion his chest pain and symptoms improved by at least fifty percent.

Nurse Page simply allowed Plaintiff to bleed out until only an emergency room visit could save his life. Nurse Page knew that Plaintiff had had hemorrhoidectomy surgery to treat "the same bleeding he'd been suffering with for years." (ECF No.140 at 26:20-21.).

Based on these allegations, Plaintiff brings claims for violation of the Eighth Amendment and negligence against Nurse Page.

## IV. DEFENDANT'S FACTS[4]

Plaintiff is claiming that defendant Page was deliberately indifferent to his alleged serious medical needs and committed medical malpractice because, after examining him on February 12, 2010, in response to his request for health care services, she failed to immediately refer him to a physician for further evaluation and treatment. (SAC, pages 109-117, paras. 278-279 on page 155, paras. 290-300 on page 157-158.)

Plaintiff had a hemorrhoidectomy performed on him on December 30, 2009. (Barnett Decl. III, para. 11, Ex. A.) On February 3, 2010, plaintiff was seen by his surgeon who noted in his report that plaintiff: (a) was definitely feeling better and healing well from the procedure; and (b) had experienced some bleeding after bowel movements; otherwise plaintiff made no

---

[4] Summarized from Defendant's Statement of Undisputed Facts 1-45. (ECF No. 234-2.)

other complaints regarding his medical condition at that time. (Barnett Decl. III, para. 12, Ex. B.)

As of February 12, 2010, plaintiff had secured an appointment to see Dr. Metts on February 18, 2010. (Barnett Decl. III, para. 13.) On February 10, 2010, plaintiff filled out a Health Care Services Request Form. (Barnett Decl. III, para. 14, Ex. C.) When describing the reasons why plaintiff was requesting health care, he said he was on chronic care for his heart (plaintiff equated this with his history of hypertension) and had experienced dizziness and shortness of breath whenever he exerted himself; plaintiff made no mention of suffering from any chest pain or any other acute condition that would indicate the need for immediate emergency treatment. (Barnett Decl. III, para. 14, Ex. C.)

In response to plaintiff's Request, Nurse Page reviewed his medical file and examined and evaluated him on February 12, 2010. (Barnett Decl. III, para. 14, Ex. C.) Nurse Page indicated in her examination notes (which are on the same document as the Health Care Services Request Form dated 2/10/10) that plaintiff had a doctor's appointment scheduled on February 18, 2010. (Barnett Decl. III, para. 14, Ex. C.) Plaintiff reported to Nurse Page that he was fatigued--tired all of the time, had heart problems and a history of hypertension.

The records do not reflect a history of cardiac problems. (Barnett Decl. III, para. 14, Ex. C.) The history indicates that plaintiff mistakenly equated hypertension with heart problems. Nurse Page discussed with plaintiff the distinction between hypertension, anemia and being a patient with heart problems. (Barnett Decl. III, para. 14, Ex. C.) Nurse Page examined plaintiff and concluded that he was alert and oriented and not in acute distress. She took plaintiff's temperature (97.8 degrees), pulse (70) and blood pressure (130/80), all of which were within normal ranges. (Barnett Decl. III, para. 14, Ex. C.)

Nurse Page's examination notes taken on February 12, 2010, contain no reference to any complaint by plaintiff that he had chest pains, only his confusion as to heart problems versus hypertension and anemia. (Barnett Decl. III, para. 14, Ex. C.) Nurse Page's examination notes indicate that, based on her training and experience, the lack of objective signs of acute distress requiring emergency treatment, and the existing scheduled doctor's appointment, she made a

professional medical judgment and determined that plaintiff did not require an immediate referral to a physician and that it was appropriate to have him evaluated at the scheduled doctor's appointment on February18, 2010. (Barnett Decl. III, para. 15.) Under the circumstances, this judgment was reasonable and met the standard of care in the medical community. (Barnett Decl. III, para. 15.) The medical records affirm that plaintiff did not make any further request for medical care after his examination by Nurse Page and before his appointment with Dr. Metts on February 18, 2010. (Barnett Decl. III, para. 16.)

During plaintiff's examination by Dr. Metts on February 18, 2010, he related a brief history of chest pains, a family history of cardiac disease, fatigue, dizziness, shortness of breath and bleeding (not a lot) from his rectum when he had a bowel movement. (Barnett Decl. III, para. 17, Ex. D.) Dr. Metts examined plaintiff and concluded that his heart had a regular rate and rhythm and his blood pressure was 116/78. (Barnett Decl. III, para. 17, Ex. D.) Dr. Metts diagnosed plaintiff as suffering from hypertension, hepatitis C and hemorrhoids. He characterized plaintiff's reported chest pain as mild. He did not diagnose anemia at that time. (Barnett Decl. III, para. 17, Ex. D.) Dr. Metts did not consider any of the presenting complaints so acute and significant so as to require an emergency referral. As part of his evaluation, he ordered some blood work. (Barnett Decl. III, para. 17, Ex. D.)

The next day the blood test results were received. Dr. Metts ordered that plaintiff be transported to Mercy Hospital. (Barnett Decl. III, para. 18, Ex. E.) Dr. Metts diagnosed plaintiff as suffering from a slow chronic gastrointestinal bleed and anemia which was consistent with plaintiff's presenting complaints and studies. There was no diagnosis of heart problems or referral for cardiac workup as none was indicated. (Barnett Decl. III, para. 18, Ex. E.) The plaintiff was transferred to the hospital for workup and treatment of anemia and suspected slow bleed on a non-emergency basis. (Barnett Decl. III, para. 18, Ex. E.) Before transport to the hospital, plaintiff was sent to Triage and Treatment for evaluation. Over a two-hour period nurses noted three separate times that plaintiff was not in pain or discomfort and his presentation was stable. (Barnett Decl. III, para. 19, Ex. F.) About fifteen minutes before

///

plaintiff went to the hospital he told staff that he was feeling fine. (Barnett Decl. III, para. 19, Ex. F.)

Plaintiff was examined by Dr. Magalong at Mercy Hospital on February 19, 2010, and admitted for anemia, secondary to the passage of blood from his rectum. (Barnett Decl. III, para. 20, Ex. G.) The history obtained was positive for hypertension, but no cardiac related condition or symptoms. Dr. Magalong also noted that plaintiff was not in any form of distress. (Barnett Decl. III, para. 20, Ex. G.) His blood pressure was 129/88, his pulse was 78 and his temperature was 97.6 --again, all within normal ranges. His heart had a regular rate and rhythm. (Barnett Decl. III, para. 20, Ex. G.) Dr. Magalog's plan was to admit plaintiff for a blood transfusion and anemia workup. (Barnett Decl. III, para. 20, Ex. G.)

Plaintiff was admitted to the hospital in stable condition. (Barnett Decl. III, para. 20, Ex. G.) There is no mention of any chest pain and no diagnosis of cardiac problems, nor any indications of any history or symptoms indicating a need for a cardiac referral in Dr. Magalog's report. (Barnett Decl. III, para. 20, Ex. G.) While plaintiff was at Mercy Hospital, gastroenterologist and general surgical consultations were performed which are consistent with the evaluations by Dr. Metts and Dr. Magalong. (Barnett Decl. III, para. 21, Exs. H, I and J.) Both of the consulting doctors affirmatively state that there was no significant past medical history other than presenting complaints related to anemia. (Barnett Decl. III, para. 21, Exs. H, I and J.) None of the physicians recommended any evaluation of plaintiff by a cardiologist, nor did they note any heart related concerns. (Barnett Decl. III, para. 21, Exs. H, I and J.) Plaintiff was discharged on February 23, 2010 in improved and stable condition. (Barnett Decl. III, para. 21, Exs. H, I and J.)

After Dr. Barnett reviewed the above-mentioned records and obtained all of the facts concerning the relevant care and treatment rendered to the plaintiff, and based upon his education, training, qualifications, and experience, Dr. Barnett determined the treatment rendered to the plaintiff by Nurse Page was appropriate. (Barnett Decl. III, para. 22.) It is his medical expert opinion that no action, inaction, conduct, error, or omission on the part of Nurse Page had any causal connection to any alleged injuries or damages claimed by the plaintiff.

Given the circumstances, the medical care and treatment which Nurse Page rendered to the plaintiff was appropriate and consistent with the plaintiff's medical condition and presenting circumstances. (Barnett Decl. III, para. 22.) Nothing that Nurse Page either did, or did not do, played any causal role, to a reasonable degree of medical probability, in causing harm to the plaintiff. (Barnett Decl. III, para. 22.) Nurse Page was not responsible for the plaintiff's care and treatment before or after Plaintiff saw her on February 12, 2010. (Barnett Decl. III, para. 22.)

Plaintiff alleged that he presented a claim to the Board as required by the Act. (SAC, p. 2, para. IIC.) Plaintiff did not attach any government claims to his complaint to support that allegation or to prove that the allegations in the claim fairly reflect the allegations in the complaint. (SAC.) The Board's records show, however, that Plaintiff presented one government claim—G596404—to the Board between January 1, 2007, and April 10, 2014. (Brooks Decl., Ex. A; Foley Decl. ¶ 4.) Plaintiff presented G596404 to the Board on April 6, 2011. (Brooks Decl., Ex. A.) Plaintiff received a letter from the Board dated April 20, 2011, informing him that his claim had been received. (Brooks Decl., Ex. A) Although the claim fairly reflects the allegations in Plaintiff's Second Amended Complaint, that claim was "being accepted only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented." (Brooks Decl., Ex. A.)

## V. PLAINTIFF'S RESPONSE[5]

Plaintiff disputes all of Defendant's facts except the following:

Plaintiff had a hemorrhoidectomy performed on him on December 30, 2009. (Barnett Decl. III, para. 11, Ex. A.) On February 10, 2010, plaintiff filled out a Health Care Services Request Form. (Barnett Decl. III, para. 14, Ex. C.) In response to plaintiff's Request, Nurse Page reviewed his medical file and examined and evaluated him on February 12, 2010. (Barnett Decl. III, para. 14, Ex. C.) While plaintiff was at Mercy Hospital, gastroenterologist and

---

[5] Summarized from Plaintiff's Undisputed Facts, (ECF No. 271), and Response to Defendant's Statement of Undisputed Facts, (ECF No. 273).

8

general surgical consultations were performed which are consistent with the evaluations by Dr. Metts and Dr. Magalong. (Barnett Decl. III, para. 21, Exs H, I and J.) Plaintiff was discharged on February 23, 2010 in improved and stable condition. (Barnett Decl. III, para. 21, Exs H, I and J.) Plaintiff alleged that he presented a claim to the Board as required by the [California Tort Claims] Act. (SAC, p. 2, para. IIC.) The Board's records show that Plaintiff presented one government claim—G596404—to the Board between January 1, 2007, and April 10, 2014. (Brooks Decl., Ex. A; Foley Decl. ¶ 4.) Plaintiff received a letter from the Board dated April 20, 2011, informing him that his claim had been received. (Brooks Decl., Ex. A.)

Following is a summary of Plaintiff's arguments and supporting facts.[6] [7]

1. <u>Nurse Page knew Plaintiff was at a substantial risk of serious harm when Plaintiff met with her on February 12, 2010 because:</u>

    a. She noted this on her triage form (Exh. J);

    b. She had previously documented on 1-14-10 and 2-2-10 that Plaintiff had a history of heart trouble (Exhs. I & Y);

    c. She noted Plaintiff's worsening condition on 2-2-10 (Exh. I);

    d. Plaintiff complained to her on his medical care request forms of shortness of breath and dizziness, and noted that he was on chronic care for his heart (Exhs. I & J);

    e. She knew that he was a chronic care patient with hypertension when she saw him on 2-2-10 and 1-12-10 (Exhs. I & Y);

///

---

[6] These facts are taken from Plaintiff's Response to Defendant Page's Statement of Undisputed Facts. (ECF No. 273.)

[7] Plaintiff requests the court to take judicial notice of over 200 pages of documents that include, inter alia, copies of his medical records and prison appeals, summaries of the <u>Plata</u> cases, various CDCR written health care services policies, Defendant Page's Responses to Plaintiff's Requests for Admissions, the Declaration of inmate Collin Walsh, Plaintiff's Govt Claim Form #596404, and Responses by defendant Enenmoh to Plaintiff's Interrogatories. (ECF No. 270.) These are not the type of facts for which judicial notice is appropriate because they are subject to reasonable dispute, are not generally known, and are not capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Therefore, the court should deny Plaintiff's request for judicial notice. However, these documents should be accepted as Plaintiff's evidence in opposition to the motion for summary judgment.

|   |   |   |
|---|---|---|
| | f. | Plaintiff's 7362 form indicated a need for immediate emergency treatment per CDCR Protocols (Exhs. H & I); |
| | g. | Her triage notes indicate Plaintiff's history of cardiac problems; |
| | h. | The Protocol states that one of the diagnoses for cardiovascular chronic care is hypertension (Exh. L) and Page admits that she knows it (Exh. G ¶61); |
| | i. | Her notes reflect she knew about the hypertension (Exh. cc); |
| | j. | Plaintiff informed her on 2-10-10 that "walking to chow is difficult;" |
| | k. | On 2-18-10, when Plaintiff met with Dr. Metts, he complained that since his surgery 6-8 weeks prior, he had severe fatigue, dizziness, and stabbing pain in his chest for 5 minutes at a time during the last 2 weeks (Exh. K). |
| 2. | | <u>Nurse Page did not act reasonably in providing medical care for Plaintiff, because</u>; |
| | a. | She examined Plaintiff on February 12, 2010, judged that he was not anemic, and decided Plaintiff only needed to see the doctor for a routine visit six days later; |
| | b. | She refused to let Plaintiff see a doctor eight feet away (SAC at 109); |
| | c. | She did not follow the Protocol for chest pain, should have notified a physician STAT (Exh. H.), and admits that she had the requisite training (Exh. G ¶42); |
| | d. | She failed to provide the basic medical services required by <u>Plata</u>, which state that routing referrals should be made within 14 days (see bottom of every 7362 form); on 2-2-10, she scheduled Plaintiff for an appointment 19 days after her last referral; |
| | e. | She did not refer Plaintiff for immediate emergency treatment under Protocols and <u>Plata</u> after Plaintiff mentioned acute symptoms on his 2- |

///

|   |   |   | 10-10 7362 form that would indicate a need for immediate emergency treatment (Exh. J); |
|---|---|---|---|
|   |   | f. | In scheduling Plaintiff for the February 18, 2010 appointment, she violated Protocol which requires a visit with the PCP (primary care physician) within 5 days; |
|   |   | g. | She failed to document the 2-18-10 referral (Exh. J), which is against protocols (Exh. bb); |
|   |   | h. | Her chosen course of treatment was unacceptable under new medical care policies and procedures according to the <u>Plata</u> lawsuit agreement; |
|   |   | i. | She did not follow specific instructions required for nurses on Nursing Protocols (Exh. aa), which she said she was familiar with (Exh. G); |
|   |   | j. | She did not check on Plaintiff during the 6 days before his 2-18-10 appointment, even though Plaintiff indicated "now walking to chow is difficult," showing that he could not walk to medical. |
|   |   | k. | Inmate Collin Walsh declared that Plaintiff's condition was deteriorating during those 6 days (Exh. mm). |
|   | 3. | \multicolumn{2}{l|}{<u>Plaintiff suffered harm as a result of Nurse Page's conduct because:</u>} |

3. <u>Plaintiff suffered harm as a result of Nurse Page's conduct because:</u>
   a. The differences shown by the symptoms listed on the CDCR 7362 Forms of 22-10 (Exh. I), 2-12-10 (Exh. J), and Dr. Metts examination on 2-18-10 (Exh. K);
   b. Exhs. I, J, X, and Y document that Plaintiff suffered injury from Nurse Page's breach of duty;
   c. At his 2-19-10 visit with Dr. Metts, Plaintiff needed emergency testing (EKG, x-ray) and was transported to the hospital on an urgent basis (Exh. E-code 2, Exhs. M, N);
   d. Dr. Metts diagnosed him with heart problems (Exh. K at line 18), he was in pain and his heart rate fluctuated (Exh. M at line 24), Plaintiff was not

///

11

|     |     |                                                                                                                  |
| --- | --- | ---------------------------------------------------------------------------------------------------------------- |
| 1   |     | feeling fine (Exh. M), and he said he had blood in his stool, was dizzy,                                         |
| 2   |     | and had low blood pressure;                                                                                      |
| 3   | e.  | He had "severe anemia" with passage of bright red blood (Exh. O);                                                |
| 4   | f.  | He was not in stable condition when he entered the hospital, as shown by                                         |
| 5   |     | the fact that they gave him sandwiches and juice (Exh. O);                                                       |
| 6   | g.  | After the transfusions, his blood pressure continued to fluctuate, which                                         |
| 7   |     | shows significant cardiovascular related symptoms;                                                               |
| 8   | h.  | There is a direct causal connection between Nurse Page's actions and                                             |
| 9   |     | Plaintiff's 2 weeks of unnecessary pain and suffering, causing him to be                                         |
| 10  |     | afraid he would die.                                                                                             |
| 11  | 4.  | <u>Plaintiff's claim was properly submitted to the VCGCB in compliance with                                      |
| 12  |     | California's Tort Claims Act, because</u>:                                                                       |
| 13  | a.  | Defendant Enenmoh stated that Plaintiff's claim "fairly reflects the                                             |
| 14  |     | allegations in Plaintiff's First Amended Complaint," (Defendant                                                  |
| 15  |     | Enenmoh's Fact #137), and the court recognized that the First and                                                |
| 16  |     | Second Amended Complaints were identical (ECF No. 223);                                                          |
| 17  | b.  | In their undisputed fact #45, Defendants themselves state "although the                                          |
| 18  |     | claim fairly reflects the allegations in Plaintiff's Second Amended                                              |
| 19  |     | Complaint;"                                                                                                      |
| 20  | c.  | Plaintiff submitted the claim to a corrections officer for mailing on 2-12-                                      |
| 21  |     | 11, so under the prison mailbox rule it was submitted on that date, not                                          |
| 22  |     | April 6, 2011;                                                                                                   |
| 23  | d.  | Plaintiff disputes that the claim was only accepted for allegations of                                           |
| 24  |     | events occurring six months prior to the date it was submitted, because                                          |
| 25  |     | Gretchen Brook's letter, an official VCBCG document (Exh. S), states                                             |
| 26  |     | the date of Incident as "Unspecified;" which shows that the claim                                                |
| 27  |     | includes "current ongoing injury" as listed on Plaintiff's claim form, and                                       |
| 28  |     | thus Plaintiff proceeds on a continuing violation theory.                                                        |

## VI. ANALYSIS

The parties have not disputed that Plaintiff had a serious medical need on February 12, 2010, when he met with Nurse Page.

Defendant submits evidence via her expert witness's opinion that she did not act with deliberate indifference or negligence against Plaintiff when she met with him on February 12, 2010, and judged that Plaintiff did not need immediate medical care and could instead wait to see the doctor for a routine visit. (Barnett Decl., ECF No. 234-5.) Dr. Barnett, a physician licensed by the state of California who earned his medical degree from Harvard Medical School in 1975, has set forth sufficient information about his education and experience to qualify as an expert witness. (Id. ¶¶1-7.) He reviewed Plaintiff's health records and evaluated the care provided to Plaintiff by Nurse Page, concluding that the care met the standard of care in the medical community, and "[n]othing that Nurse Page either did or did not do, played any causal role, to a reasonable degree of medical probability, in causing harm to the plaintiff." (Id. ¶¶9, 22.) The court finds that Defendant has met her burden of demonstrating that she did not act with deliberate indifference or negligence against Plaintiff or cause him harm. The burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

Plaintiff's evidence consists of his own declaration, the declaration of inmate Collin Forth, Plaintiff's medical records, and other records. Plaintiff argues that Nurse Page was aware of his symptoms because he told her about his symptoms and she made notes showing that she knew. Plaintiff submits copies of the medical request forms he completed stating that he suffered from chest pain, fatigue, and hypertension. Plaintiff also submits evidence that Nurse Page had met with him before and knew about his medical history.

Plaintiff contends that Nurse Page must have made the inference that Plaintiff had a substantial risk of serious harm. He argues that she knew that Plaintiff was receiving chronic care, suffered from hypertension, and had a history of a heart condition. He asserts that she knew the nurse's Protocols she was supposed to follow and was required, according to his symptoms, to administer emergency care or refer him immediately to a physician. Her triage

13

notes indicate that Plaintiff "has a history of hypertension," which Plaintiff equates to a history of cardiac problems, because one of the diagnoses of cardiovascular chronic care program is Hypertension.

Plaintiff's evidence that Nurse Page knew about his symptoms not prove that she drew the inference that Plaintiff had a substantial risk of serious harm. There is no evidence that Defendant had the requisite state of mind for an Eighth Amendment violation. In fact, Defendant's notes indicate that she did not believe Plaintiff had a heart condition or anemia. Even if Plaintiff had urgent symptoms there is no deliberate indifference if Nurse Page was not aware.

With respect to whether Nurse Page's conduct caused Plaintiff harm, Plaintiff, a layperson, is not qualified to make a medical diagnosis, to determine whether Nurse Page's conduct was within the appropriate standard of care, or to decide whether Nurse Page's actions were the cause of any injury. Plaintiff does not have the credentials to qualify as an expert witness, and therefore such evidence is not admissible.

In light of the foregoing, the court finds that Plaintiff has not met his burden of producing admissible evidence creating a genuine dispute of material fact for trial, and therefore Defendant Page is entitled to summary judgment against him.

## VII. CONCLUSION AND RECOMMENDATIONS

Defendant Page has submitted evidence that she did not act with deliberate indifference or negligence when interacting with Plaintiff on February 12, 2010, or cause him injury. Plaintiff did not produce any admissible evidence in response that created a disputed issue of material fact for trial. Accordingly, Defendant is entitled to judgment on Plaintiff's claims against her, and Defendant's motion for summary judgment, filed on May 12, 2017, should be granted.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Page's motion for summary judgment, filed on May 12, 2017, be GRANTED; and
2. Judgment be entered in favor of Defendant Page; and

3. This case proceed only against defendants Dr. A. Enenmoh, Correctional Officer Perez-Hernandez, and Nurse Adair, on Plaintiff's claims for violation of the Eighth Amendment and related state-law negligence.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen (14) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 21, 2017**           **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE