UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN DASENBROCK,<br><br>      Plaintiff,<br><br>  vs.<br><br>A. ENENMOH, et al.,<br><br>      Defendants. | 1:11-cv-01884-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT ENENMOH'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**<br>**(ECF No. 232.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.    BACKGROUND

Robin Dasenbrock ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 14, 2011. (ECF No. 1.) This case now proceeds with Plaintiff's Second Amended Complaint ("SAC") filed on September 8, 2015, against defendants Dr. A. Enenmoh, Correctional Officer Perez-Hernandez, Nurse Page, and Nurse Laura Adair, on Plaintiff's claims for violation of the Eighth Amendment and related state-law negligence. (ECF No. 140.)

On May 9, 2017, defendant Dr. A. Enenmoh ("Defendant") filed a motion for summary judgment.[1] (ECF No. 232.) On June 6, 2017, Plaintiff filed an opposition to the motion. (ECF

---

[1] Concurrently with his motion for summary judgment, Defendant Enenmoh served Plaintiff with the requisite notice of the requirements for opposing the motion. <u>Woods v. Carey</u>, 684 F.3d 934, 939-41 (9th Cir. 2012); <u>Rand v. Rowland</u>, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 232-1.)

No. 248.) On June 20, 2017, Defendant filed a reply to the opposition. (ECF No. 250.) The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion should be granted.

## II. THE COURT'S PRIOR FINDINGS AND RECOMMENDATIONS

Each of the four defendants in this case filed a separate motion for summary judgment. (ECF Nos. 224, 230, 232, 234.) The court entered findings and recommendations addressing three of the four motions. (ECF Nos. 275, 282, 283.) Plaintiff is proceeding with the same two claims against all four Defendants, (1) inadequate medical care under the Eighth Amendment, and (2) related state-law negligence. Plaintiff claims that all four of the defendants failed to provide him with adequate medical care for his hemorrhoid condition.

Due to the similarities in Plaintiff's claims against each defendant, the same legal standards apply to all four of the motions for summary judgment. Therefore, the court need not repeat Plaintiff's background information or the legal standards for screening of the complaint, summary judgment, Eighth Amendment medical claims, state-law negligence, judicial notice, supplemental jurisdiction, California's Government Claims Act, or qualified immunity. The parties are referred back to the findings and recommendations entered on November 15, 2017, and December 12, 2017, if they wish to review the background information and applicable standards. (ECF Nos. 275, 282.) In the present findings and recommendations, the court focuses only on the motion for summary judgment filed by Defendant Enenmoh.

## III. SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT ENENMOH IN THE SECOND AMENDED COMPLAINT[2]

Dr. Enenmoh was the Chief Medical Officer (CMO) and head of all medical personnel at SATF during the relevant time period. Defendant Enenmoh bears the ultimate responsibility for the welfare of the inmates in the institution and for ensuring that the inmates have the level

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

of health services commensurate with contemporary medical practices. All of the prison medical clinics where the events at issue occurred must report to Defendant Enenmoh.

Plaintiff entered the Substance Abuse Treatment Facility ("SATF") on November 15, 2001. Plaintiff began bleeding from the rectum in 2007. For three years, Plaintiff received no help or surgery, even though eleven different doctors ordered that a colonoscopy and/or hemorrhoidectomy be done sixteen times. Plaintiff was told that he needed a colonoscopy and hemorrhoid surgery. A colonoscopy was ordered by specialist M.D. Harpan Bhaika on November 29, 2007. In April 2008, Plaintiff began filing prison appeals, and Dr. Enenmoh responded to a number of them. No tracking system was in place to ensure the surgery had been completed, and the CMO never set up a procedure to alleviate the problem of detecting missed surgeries. On July 24, 2008, Plaintiff's colonoscopy was canceled and had to be rescheduled because Plaintiff did not receive the golytely to drink which is used to clean out his digestive system. In September 2008, Dr. Enenmoh authorized both procedures, the colonoscopy and hemorrhoidectomy, which were scheduled. Plaintiff continued to file appeals.

Dr. Enenmoh was aware of Plaintiff's condition because he received copies of Plaintiff's complaints, via inmate appeals, on a regular basis over the years and responded to a number of them. RN Ybarra, working for and with Dr. Enenmoh, completed comprehensive reviews of Plaintiff's medical file for Dr. Enenmoh, which he responded to. The CMO knew that Plaintiff needed surgery from 2008 onward.

On May 12, 2009, Plaintiff was finally called for surgery but it was again cancelled because Plaintiff did not receive golytely to drink. It was tentatively rescheduled for June 17, 2009, but was cancelled by the physician's office. On June 19, 2009, Plaintiff was transported to Bakersfield Hospital where he was given a colonoscopy and was diagnosed with internal hemorrhoids and diverticulosis. Follow up surgery was ordered by Dr. Raman on July 1, 2009. Plaintiff was scheduled to see a surgical specialist. On August 3, 2009, Plaintiff's trip to the hospital was canceled. Again, Plaintiff did not receive golitely to drink. On September 16, 2009, Plaintiff was transported to Bakersfield Hospital to see Dr. Rodriguez, but he would not

do the hemorrhoidectomy because he did not have the colonoscopy results and could not find them.  By October 29, 2009, Plaintiff had been scheduled again for the hemorrhoidectomy, but Plaintiff's colonoscopy results could not be found.  On December 23, 2009, RN Ybarra told Plaintiff he had "fallen through the cracks" but was now on the list for surgery.  (SAC, ECF No. 140 at 23:9-10.)  On December 30, 2009, Plaintiff was transported to Corcoran Hospital for hemorrhoid surgery performed by Dr. Parvez.

For more than four years, Plaintiff sought help verbally and in writing from each of the defendants to stop his rectal bleeding caused by from internal hemorrhoids.  Defendants failed to perform their duties, which caused Plaintiff's condition to worsen and further injured him. After 3 ½ years the surgery was performed, but Plaintiff's long term condition failed to improve.  He continued to bleed from the rectum and sought help to stop the bleeding from a number of CMO Enenmoh's staff and guards.  According to Dr. Enenmoh, medical help was available 24 hours a day at SATF, but employees who report to Dr. Enenmoh would not help Plaintiff when he asked for assistance.  Plaintiff believes that his injuries would have been avoided if the CMO adequately trained his staff or initiated policies.

After Plaintiff had hemorrhoid surgery, the surgeon ordered laxatives and medications (Vitamin C, multivitamins, and iron), but the CMO considered the orders to be only recommendations and Plaintiff was not given the medications.  Only Tylenol 3 was given, which causes constipation and caused Plaintiff to bleed so much during bowel movements that he felt he would pass out from the pain and blood loss.  In responding to Plaintiff's 602 appeal about not receiving medications, Dr. Enenmoh responded, "Per California prison health care services memorandum date 2/01/10 . . . Vitamin C was discontinued as a medication provided. Multivitamins prescribing is restricted to patients diagnosed with malabsorption."  (ECF No. 140 at 59:10-14.)  Plaintiff did not receive medication that could have helped him heal, and his condition worsened to the point of Emergency Room intervention.

Plaintiff requested help verbally and in 602 appeals, but the defendants did nothing. CMO Enenmoh even used an inadequate pharmacy formulary memo to justify his denial of

///

medication and treatment. Defendant Enenmoh seems to have a policy of denying prescribed medication using the wrong Title 15 section, which prevented Plaintiff from receiving medications ordered by hospital doctors under contract with the CDCR and prison doctors. On January 14, 2010, Plaintiff finally received a copy of the colonoscopy results.

Two months after surgery, on February 3, 2010, Plaintiff complained to Dr. Parvez about severe blood loss and pain, and was told that it would lessen. Dr. Parvez yanked on an uncut stitch in the rectal area, which tore the skin and caused Plaintiff pain and bleeding. Other doctors tried to treat this wound non-surgically, to no avail. The "fissure" on his rectum caused by Dr. Parvez caused Plaintiff to bleed out much more blood than his body could reproduce, causing life threatening heart symptoms -- shortness of breath, sharp stabbing chest pains, tightness of the chest, dizziness, and tiredness. Plaintiff was found to be anemic, and on February 19, 2010, had to be rushed to the Emergency Room at Bakersfield's hospital for life-saving blood transfusions and another colonoscopy. On February 23, 2010, Plaintiff was returned to the prison but did not receive the medications ordered by the hospital doctors. Plaintiff finally received iron pills but no vitamins because they were discontinued at the prison. Plaintiff was still bleeding. He met with Dr. Beregovskaya on June 20, 2010, who told him he may have to return to the hospital for exploratory surgery. Plaintiff continued to file prison appeals. Plaintiff's bleeding continued into 2011.

Based on these allegations, Plaintiff brings claims for violation of the Eighth Amendment and negligence against Dr. Enenmoh.

## IV.    DEFENDANT ENENMOH'S STATEMENT OF UNDISPUTED FACTS[3]

Defendant Enenmoh submits the following undisputed material facts in support of his motion for summary judgment. Defendant reserves the right to present additional or contrary facts at trial.

1.    Plaintiff Robin Dasenbrock (E-92288) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who is

---

[3] Taken from Defendant's Statement of Undisputed Facts #1-134. (ECF No. 232-3.)

currently incarcerated at Mule Creek State Prison in Ione, California. (ECF No. 130.)

2. At all times relevant to the allegations in the Second Amended Complaint, Dasenbrock was incarcerated at the Substance Abuse Treatment Facility (SATF) in Corcoran, California. (ECF No. 140.)

3. At all times relevant to the allegations in this case, Dasenbrock was housed at SATF on Facility G. (ECF No. 140 at p. 12.)

4. When Plaintiff wants medical attention, he can fill out a medical request form (7362) and put it in a box located in front of the medical clinic on his prison yard. (Pl.'s Depo. at 9:21-10:17.)

5. Plaintiff has a Primary Care Physician (PCP) who is assigned for three to six months at a time, and Plaintiff's PCP sees him whenever he has an appointment with a medical doctor at the prison. (Pl.'s Depo. at 32:10-33:1.)

6. Plaintiff started experiencing rectal pain, bleeding, and itching at SATF in 2006 or 2007 and immediately sought medical attention. (Pl.'s Depo. at 10:24-11:9.)

7. On May 3, 2007, Dasenbrock's laboratory test results showed a normal blood count and no anemia. (Barnett Decl. ¶ 11c.)

8. Dr. Enenmoh evaluated Plaintiff in 2007 for his complaints of rectal pain, bleeding, and itching, and gave Plaintiff Anusol cream and possibly suppositories. (Pl.'s Depo. at 11:15-12:5, 12:12-20.)

9. On November 29, 2007, Plaintiff had a consultation with a gastroenterologist out of Mercy Hospital in Bakersfield, who indicated that Plaintiff probably had hemorrhoids and should have a colonoscopy soon. (Barnett Decl. ¶ 11f.)

10. On November 29, 2007, Dr. Enenmoh wrote an order for Plaintiff to have a "colonoscopy ASAP" based on the gastroenterologist's recommendation that Plaintiff should have one soon. (Barnett Decl. ¶ 11g.)

///
///

11. Plaintiff was not able to have a colonoscopy performed as scheduled on multiple occasions because he did not receive the required preparatory drink beforehand. (Pl.'s Depo. at 22:3-22; Barnett Decl. ¶¶ 11h, 11w, & 14.)

12. Plaintiff had a colonoscopy scheduled before January 17, 2008, but the procedure was not done because Plaintiff did not receive the preparation for it. (Barnett Decl. ¶ 11h.)

13. On May 9, 2008, Dr. Leon referred Plaintiff for a colonoscopy and hemorrhoidectomy. (Barnett Decl. ¶ 11k.)

14. The best practice for dealing with mild hemorrhoids (grade 1 or grade 2) is to treat conservatively (that is, without surgery), since the vast majority of them heal on their own with no medical intervention. (Barnett Decl. ¶ 11n.)

15. Surgery is done to remove hemorrhoids that protrude well beyond the rectum (severely prolapsed hemorrhoids) or continue to bleed despite conservative therapy. (Barnett Decl. ¶ 11n.)

16. On June 17, 2008, Plaintiff filled out a dental health history and answered "no" to the question "have you experienced diarrhea, constipation, blood in stools." (Barnett Decl. ¶ 11*l*.)

17. On August 19, 2008, Plaintiff was examined and diagnosed with hemorrhoids with no active bleeding. (Barnett Decl. ¶ 11m.)

18. On August 19, 2008, the plan was to refer Plaintiff to a general surgeon, but he was already scheduled for an evaluation and consultation with a general surgeon in the "very near future." (Barnett Decl. ¶ 11m.)

19. On August 19, 2008, doctors were not certain that Plaintiff required hemorrhoid surgery. (Barnett Decl. ¶ 11m.)

20. Plaintiff did not have an urgent need for a colonoscopy because he was relatively young with no family history of colon cancer. (Barnett Decl. ¶¶ 11f, 11k, 11m, 11z, & 15.)

///

21. Plaintiff had a need for a colonoscopy only as a precursor test before the possibility of a hemorrhoid surgery could be fully considered. (Barnett Decl. ¶¶ 11m & 15.)

22. On August 22, 2008, Dr. Schuster, a general surgeon, examined Plaintiff, found a prolapsed hemorrhoid, and recommended a colonoscopy. (Barnett Decl. ¶ 11n.)

23. On August 22, 2008, Dr. Schuster also recommended that Plaintiff have a hemorrhoidectomy if the colonoscopy was negative, but did not indicate that Plaintiff had an urgent need for a hemorrhoidectomy. (Barnett Decl. ¶ 11n.)

24. On October 9, 2008, an examination of Plaintiff's rectum revealed no obvious bleeding and no hemorrhoids. (Barnett Decl. ¶ 11o.)

25. On January 19, 2009, Plaintiff complained to a nurse that he had been without his heart medications for three days and that he was having chest pains. (Barnett Decl. ¶ 11p.)

26. The nurse called a doctor to renew Plaintiff's heart medications, scheduled him to see a doctor, and sent him back to his cell. (Barnett Decl. ¶ 11p.)

27. On April 15, 2009, Plaintiff filled out a 7362 asking whether he was still scheduled for a colonoscopy and hemorrhoidectomy on the same day, as ordered by Dr. Schuster on August 22, 2008. (Barnett Decl. ¶ 11n.)

28. Dr. Schuster did not recommend that Plaintiff have a colonoscopy and a hemorrhoidectomy on the same day. (Barnett Decl. ¶ 11n.)

29. On April 22, 2009, a physician assistant requested that Plaintiff have a colonoscopy. (Barnett Decl. ¶ 11r.)

30. On April 29, 2009, Plaintiff complained to Dr. Nyenke that he was bleeding intermittently due to his hemorrhoids. (Barnett Decl. ¶ 11s.)

31. Dr. Nyenke did not observe any external hemorrhoids. (Barnett Decl. ¶ 11s.)

32. Plaintiff refused to allow Dr. Nyenke to conduct a digital rectal examination. (Barnett Decl. ¶ 11s.)

33. Dr. Nyenke referred Plaintiff for a surgical consultation. (Barnett Decl. ¶ 11s.)

34. On May 20, 2009, Plaintiff's lab and blood test results did not show any evidence of anemia or substantial blood loss. (Barnett Decl. ¶ 11t.)

35. On June 19, 2009, Plaintiff had a colonoscopy done. (Barnett Decl. ¶ 11v; Pl.'s Depo. at 15:7-11.)

36. Plaintiff had a hemorrhoid surgery scheduled for August 3, 2009. (Barnett Decl. ¶ 11w.)

37. Plaintiff was unable to attend the August 3, 2009, hemorrhoidectomy because, as he stated, he did not receive the preparatory drink beforehand. (Barnett Decl. ¶ 11w.)

38. Cancelled physician appointments may not be rescheduled for up to several months absent an emergency or urgent need. (Barnett Decl. ¶¶ 11g, 11w.)

39. On August 26, 2009, Dr. Enenmoh approved a physician's request for Plaintiff to have hemorrhoid surgery. (Barnett Decl. ¶ 11x.)

40. On September 16, 2009, Plaintiff had a surgery consultation with Dr. Rodriguez. (Barnett Decl. ¶ 11y.)

41. Dr. Rodriguez found that Plaintiff had grade 1 hemorrhoids, at worst, with excoriation and fissuring outside of his anus. (Barnett Decl. ¶ 11y.)

42. Dr. Rodriguez determined that Plaintiff's bleeding was due to the excoriation and fissuring. (Barnett Decl. ¶ 11y.)

43. Dr. Rodriguez found that Plaintiff did not have any acute need for hemorrhoid surgery. (Barnett Decl. ¶ 11y.)

44. On November 18, 2009, Plaintiff had a surgery consultation with Dr. Parvez. (Barnett Decl. ¶ 11z.)

45. Dr. Parvez determined that Plaintiff had internal and external hemorrhoids, but did not categorize their grade or seriousness. (Barnett Decl. ¶ 11z.)

46. Dr. Parvez recommended that Plaintiff have a hemorrhoidectomy. (Barnett Decl. ¶ 11z.)

47. Plaintiff's hemorrhoid condition would not have changed in any substantial way in the two months between consultations with Dr. Rodriguez and Dr. Parvez. (Barnett Decl. ¶ 11z.)

48. On December 10, 2009, Plaintiff's primary care provider, Dr. Metts, requested that Plaintiff have hemorrhoid surgery. (Barnett Decl. ¶ 11aa.)

49. On December 12, 2009, Dr. Enenmoh approved Dr. Metts's request for hemorrhoid surgery. (Barnett Decl. ¶ 11aa.)

50. On December, 30, 2009, Plaintiff had a hemorrhoidectomy performed by Dr. Parvez outside of the prison. (Pl.'s Depo. 16:12-14, 28:6-13; Barnett Decl. ¶ 11bb.)

51. Plaintiff had constipation before his December 30, 2009, hemorrhoidectomy and had prescriptions for docusate sodium (Colace) and fiber tablets to treat it. (Pl.'s Depo. at 27:13-20.; Barnett Decl. ¶ 11ee.)

52. Plaintiff had fiber tablets, Tylenol, and hydrocortisone cream in his cell after the hemorrhoidectomy. (Pl.'s Depo. at 38:18-39:1.)

53. Postoperative care following hemorrhoid surgery includes medications and diet adjustment to keep bowel movements relatively soft, but not so much that the patient experiences an excessive need to move his bowels. (Barnett Decl. ¶ 11hh.)

54. A patient may be prescribed pain medications and/or hemorrhoid creams following hemorrhoid surgery. (Barnett Decl. ¶ 11hh.)

55. Sitting in warm water a few times a day is soothing (sitz baths), but it is not necessary. (Barnett Decl. ¶ 11hh.)

56. After Plaintiff's December 30, 2009 hemorrhoidectomy, Dr. Parvez ordered the following treatment and medications: Keflex (cephalexin, an antibiotic), nupercaine hemorrhoid ointment, mineral oil, Motrin (ibuprofen), Tylenol #3 (Tylenol with codeine), a sitz bath basin, and Tucks wipes. (Pl.'s Depo. at 28:14-29:4; Barnett Decl. ¶ 11dd.)

57. On December 31, 2009, Plaintiff had the following prescriptions: acetaminophen (Tylenol), aller-chlor (for allergies), aspirin, amlodipine, divalproex, docusate sodium (Colace, to treat constipation), fiber tablets (a stool softener that also treats constipation), Flunisolide, hydrochlorothiazide, Mintox, indomethacin for pain, nupercaine hemorrhoid ointment, Tucks wipes, and Keflex. (Barnett Decl. ¶ 11ee.)

58. On January 4, 2010, Plaintiff received a prescription for Tylenol #3. (Barnett Decl. ¶ 11ff.)

59. On January 13, 2010, Dr. Parvez met with Plaintiff to see how he was recovering from the hemorrhoidectomy. (Barnett Decl. ¶ 11gg.)

60. Plaintiff complained to Dr. Parvez that he was still bleeding from his rectum occasionally, but stated that it was decreasing every day. (Barnett Decl. ¶ 11gg.)

61. Dr. Parvez noted that the surgical area was healing well without any sign of infection, but he noticed a stitch hanging loose and clipped it. (Barnett Decl. ¶ 11gg.)

62. On February 3, 2010, Dr. Parvez met with Plaintiff to see how he was recovering from the hemorrhoidectomy. (Barnett Decl. ¶ 11hh; Pl.'s Depo. at 61:17-22.)

63. Plaintiff reported to Dr. Parvez that he was feeling better and having bowel movements without pain, but complained that he was still bleeding with bowel movements. (Barnett Decl. ¶ 11hh.)

64. Dr. Parvez noted that Plaintiff was healing well and did not have any infection. (Barnett Decl. ¶ 11hh.)

65. On February 10, 2010, Plaintiff submitted a 7362 and stated he was having heart problems, shortness of breath, and dizziness. (Barnett Decl. ¶ 11ii; Pl.'s Depo. at 39:18-40:8.)

66. On February 12, 2010, Registered Nurse Page evaluated Plaintiff with regard to the 7362 Plaintiff submitted on February 10, 2010. (Barnett Decl. ¶ 11ii.)

67.    Plaintiff told Nurse Page that he had been losing a lot of blood since his hemorrhoidectomy and had developed chest problems at the same time. (Pl.'s Depo. at 40:11-17.)

68.    Plaintiff also told Nurse Page that he was having chest pains (sharp, stabbing pains), shortness of breath, dizziness, that he was anemic, and that he was tired all the time. (Pl.'s Depo. at 41:25-42:6; Barnett Decl. ¶ 11ii.)

69.    On February 12, 2010, Plaintiff was alert and oriented with no acute distress, and his pulse was 70 and his blood pressure was 130/80, which were both normal levels. (Barnett Decl. ¶ 11ii.)

70.    Someone with significant anemia may exhibit an increased pulse and/or low blood pressure. (Barnett Decl. ¶ 11ii.)

71.    On February 18, 2010, Plaintiff was evaluated by Dr. Metts. (Barnett Decl. ¶ 11jj; Pl.'s Depo. at 46:25-47:4.)

72.    Plaintiff complained to Dr. Metts about fatigue, a family history of coronary artery disease, shortness of breath, and bleeding ("not a lot") from his rectum when he had a bowel movement. (Barnett Decl. ¶11*ll*; Pl.'s Depo. at 47:5-7.)

73.    Dr. Metts ordered an electrocardiogram (EKG) in light of Plaintiff's family history of coronary artery disease, lab and blood tests, and a return visit within seven days. (Barnett Decl. ¶ 11*ll*.)

74.    Plaintiff had the EKG and blood tests done on February 18, 2010. (Pl.'s Depo. at 47:8-13.)

75.    Dr. Metts sent Plaintiff back to his cell after the EKG and blood tests. (Pl.'s Depo. at 47:8-13, 47:21-22, 49:11-17.)

76.    Dr. Metts did not diagnose Plaintiff as having anemia on February 18, 2010. (Barnett Decl. ¶ 11-ll.)

77.    On February 19, 2010, Dr. Metts received the results of Plaintiff's blood tests, examined Plaintiff, diagnosed him with anemia, and determined that he should go to the hospital. (Barnett Decl. ¶ 11mm; Pl.'s Depo. at 48:9-14.)

78. On February 19, 2010, prison nurses examined Plaintiff before he went to the hospital and noted that he was not in any pain or discomfort and that his vital signs were normal. (Barnett Decl. ¶ 11nn.)

79. On February 19, 2010, Plaintiff told Dr. Magalong at Mercy Hospital in Bakersfield that he was bleeding less than he had been before his hemorrhoidectomy. (Barnett Decl. ¶ 11oo.)

80. Dr. Magalong believed that Plaintiff had severe anemia, admitted him to the hospital for evaluation of the source of blood loss, setup consultations with a gastroenterologist and a surgeon, and ordered a blood transfusion. (Barnett Decl. ¶ 11oo.)

81. On February 19, 2010, Plaintiff underwent a colonoscopy performed by Dr. Bhaika at Mercy Hospital. (Barnett Decl. ¶ 11pp.)

82. Dr. Bhaika found that Plaintiff had mild internal hemorrhoids. (Barnett Decl. ¶ 11pp.)

83. Dr. Bhaika determined that Plaintiff's hemorrhoids were insufficient to explain the amount of blood he had been losing. (Barnett Decl. ¶ 11pp.)

84. On February 20, 2010, Plaintiff had a surgical consultation with Dr. Rodriguez at Mercy Hospital. (Barnett Decl. ¶ 11qq.)

85. Dr. Rodriguez did not see any external hemorrhoids and did not discover any masses or bleeding during a digital rectal examination. (Barnett Decl. ¶ 11qq.)

86. Plaintiff was discharged from Mercy Hospital on February 23, 2010. (Barnett Decl. ¶ 11rr; Pl.'s Depo. 49:18-23.)

87. When Plaintiff was discharged from Mercy Hospital, he was diagnosed with anemia from chronic gastrointestinal blood loss. (Barnett Decl. ¶ 11rr.)

88. Generally speaking, patients requiring blood transfusions for chronic bleeding are iron deficient, even after the transfusion. (Barnett Decl. ¶ 11ss.)

///
///

89. The standard of care for treating patients with iron deficiency includes administration of sufficient iron to rebuild the person's iron stores within the bone marrow. (Barnett Decl. ¶ 11ss.)

90. Oral iron in the form of ferrous sulfate is sufficient to treat a patient with iron deficiency. (Barnett Decl. ¶ 11ss.)

91. The standard of care for treating patients who are iron deficient but otherwise well nourished does not call for the administration of other vitamins or minerals that are not in fact needed, such as Vitamin B12, folate, or multivitamins. (Barnett Decl. ¶ 11ss.)

92. When Plaintiff was discharged from Mercy Hospital, the discharge instructions provided him with the following medications: ferrous sulfate (iron), multivitamins, folic acid (Vitamin B), and instructions to continue his other medications except for aspirin. (Barnett Decl. ¶ 11rr.)

93. Multivitamins are not necessary for individuals who are eating a regular diet. (Barnett Decl. ¶ 11ss.)

94. Folic acid is not necessary unless there is evidence of folic acid deficiency. (Barnett Decl. ¶ 11ss.)

95. Plaintiff's anemia was due to iron deficiency, with no suggestions by any of the healthcare providers that folic acid deficiency played any role. (Barnett Decl. ¶ 11ss.)

96. When Plaintiff returned from Mercy Hospital on February 23, 2010, the prison prescribed him ferrous sulfate and Vitamin C. (Barnett Decl. ¶ 11ss.)

97. Taking Vitamin C is not always prescribed with ferrous sulfate. (Barnett Decl. ¶ 11ss.)

98. Plaintiff's Vitamin C prescription lasted thirty days, until approximately March 25, 2010. (Barnett Decl. ¶ 11ss.)

99. Plaintiff's ferrous sulfate prescription lasted from February 24, 2010 to July 8, 2010. (Barnett Decl. ¶ 11ss.)

100. Excessive Vitamin C and excessive iron absorption can be hazardous, so neither of these drugs should be prescribed indefinitely. (Barnett Decl. ¶ 11ss.)

101. Dr. Enenmoh had nothing to do with Plaintiff's iron prescription or whether he received iron. (Pl.'s Depo. at 55:9-12.)

102. By April 7, 2010, Plaintiff's folate, Vitamin B12, and iron levels were all normal, and he had recovered from his anemia. (Barnett Decl. ¶ 11tt.)

103. On April 7, 2010, Dr. Metts renewed Plaintiff's ferrous sulfate prescription, but not his Vitamin C prescription. (Barnett Decl. ¶ 11uu.)

104. On April 7, 2010, there was no medical indication that Plaintiff required a Vitamin C prescription, because his anemia had been resolved and his iron absorption had been adequate without supplemental Vitamin C. (Barnett Decl. ¶ 11uu.)

105. On August 3, 2010, Plaintiff was deemed fit for and underwent non-emergency, reconstructive knee surgery. (Barnett Decl. ¶ 11vv.)

106. That Plaintiff was deemed fit for non-emergency surgery by his orthopedic surgeon and anesthesiologist on August 3, 2010, is strong evidence that he had completely recovered from his anemia. (Barnett Decl. ¶ 11vv.)

107. On October 4, 2010, Plaintiff complained to a doctor that he was constipated and experiencing peri-rectal itch, but no fissures or bleeding reported. (Barnett Decl. ¶ 11ww.)

108. On October 18, 2010, lab results showed that Plaintiff had a normal blood count, no iron or vitamin deficiencies, and no need for supplemental vitamins. (Barnett Decl. ¶ 11xx.)

109. On April 13, 2011, Plaintiff complained to his doctor that he was still getting slight blood stains from his rectum, but the doctor did not note any bleeding or other rectal issues. (Barnett Decl. ¶ 11yy.)

///
///

110. On April 18, 2011, a nurse evaluated Plaintiff due to complaints of rectal bleeding for one week, but no abnormalities were detected. (Barnett Decl. ¶ 11zz.)

111. On April 18, 2011, lab results showed that Plaintiff had a normal blood count, no anemia, and no sign of iron or vitamin deficiencies. (Barnett Decl. ¶ 11aaa.)

112. On May 4, 2011, Plaintiff had a surgery consultation with Dr. Parvez to address his complaints of intermittent blood in his stool, and Dr. Parvez noted that Plaintiff had an anal fissure and an anal fistula. (Barnett Decl. ¶ 11bbb.)

113. Dr. Parvez recommended that Plaintiff have the anal fissure and fistula surgically removed. (Barnett Decl. ¶ 11bbb.)

114. On May 18, 2011, Dr. Onyeje requested that Dr. Parvez perform surgery on Plaintiff to remove the anal fissure. (Barnett Decl. ¶ 11ccc.)

115. On June 6, 2011, Dr. Enenmoh approved Dr. Onyeje's request to surgically remove plaintiff's anal fissure. (Barnett Decl. ¶ 11ccc.)

116. On July 7, 2011, Dr. Parvez performed a sigmoidoscopy on Plaintiff under anesthesia, but did not discover any anal fissures or fistulas. (Barnett Decl. ¶ 11ddd.)

117. Fissures are very common and will usually heal on their own. (Barnett Decl. ¶ 11bbb.)

118. Dr. Parvez did not see any abnormality in Plaintiff's rectum on July 7, 2011. (Barnett Decl. ¶ 11ddd.)

119. Plaintiff did not have a hemorrhoidectomy on July 7, 2011. (Barnett Decl. ¶ 11ddd.)

120. On July 11, 2011, Plaintiff had a follow up appointment with Dr. Onyeje and denied experiencing rectal bleeding. (Barnett Decl. ¶ 11eee.)

121. On July 13, 2012, while Plaintiff was being seen for asthma, hypertension, and gastroesophageal reflux disease, Plaintiff did not have any complaints regarding

///

his rectum and there were no findings regarding his rectum.  (Barnett Decl. ¶ 11fff.)

122. On June 7, 2013, Plaintiff was evaluated for jock itch and he had no complaints about his rectum.  (Barnett Decl. ¶ 11ggg.)

123. On August 7, 2013, Plaintiff had no complaints other than having sinus problems.  (Barnett Decl. ¶ 11hhh.)

124. There is no requirement that every drug recommended by an outside specialist must be prescribed to an inmate by a prison doctor.  (Barnett Decl. ¶ 11hh.)

125. Recommendations for specific medications, even from specialists, are suggestions for consideration by prison doctors who are ultimately responsible for the totality of medications prescribed to an inmate.  (Barnett Decl. ¶ 11hh.)

126. The medical stamp on the back of the identification card Plaintiff had on February 12, 2010 did not show what medical conditions or diseases he had.  (Pl.'s Depo. at 42:12-18; 43:19-44:13.)

127. Plaintiff presented one government claim—G596404—to the California Victim Compensation and Government Claims Board (the board) between January 1, 2007, and April 10, 2014.  (Ex. A-1 to Brooks Decl., ECF No. 68-5; Lee Decl. ¶ 3.)

128. Plaintiff presented government claim G596404 to the Board on April 6, 2011 and generally challenged his care from Dr. Enenmoh and others.  (Ex. A-1 to Brooks Decl., ECF No. 68-5.)

129. Plaintiff received a letter from the Board dated April 20, 2011, informing him that his claim had been received.  (Ex. A-1 to Brooks Decl., ECF No. 68-5.)

130. The April 20, 2011 letter stated "Your claim is being accepted only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented."  (Ex. A-1 to Brooks Decl., ECF No. 68-5.)

///

131.    The June 19, 2009 colonoscopy revealed that Plaintiff had diverticulitis and no colon cancer.  (Barnett Decl. ¶¶ 15 & 16.)

132.    Diverticulitis is an exceedingly common condition.  (Barnett Decl. ¶ 16.)

133.    Plaintiff did not require any treatment or medications for his diverticulosis.  (Barnett Decl. ¶ 16.)

134.    Plaintiff did not suffer any harm as a result of having his colonoscopy cancelled and postponed for eighteen months.  (Barnett Decl. ¶ 16.)

## V.    DEFENDANT'S ARGUMENTS

### A.    <u>Negligence</u>

Defendant argues that (1) Plaintiff's negligence claim is time-barred under the Government Claims Act, (2) Defendant did not breach a duty owed to Plaintiff and there was no resultant harm to Plaintiff, and (3) Defendant Enenmoh's care was medically acceptable under the circumstances.

Defendant presents documentary evidence of Plaintiff's relevant Government claim #G596404, submitted on April 6, 2011, which states that the claim was accepted by the Victim Compensation & Government Claims Board "only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented." (Exh. B to Lee Decl., ECF No. 232-5 at 41.)  Defendant asserts that the six-month time period, from October 6, 2010 to April 6, 2011, did not cover Defendant Enenmoh's negligent conduct alleged in the Second Amended Complaint because Plaintiff's latest allegations against Enenmoh revolve around Plaintiff's discharge medications in February 2010.  (<u>See</u> <u>generally</u> Second Amended Complaint.)  Defendant therefore concludes that Plaintiff negligence clam is time-barred.

Defendant also presents the declaration of Dr. Barnett, expert witness, who reviewed all of Plaintiff's medical records in Plaintiff's entire Unit Health Record, medical complaints, and deposition testimony, to determine whether Dr. Enenmoh provided appropriate care to Plaintiff. (Barnett Decl., ECF No. 232-4 ¶¶8, 9-11.)  Dr. Barnett is a physician licensed by the State of California who earned his medical degree from Harvard in 1975.  (<u>Id.</u> ¶1.)  He has more than

thirty years of experience in the fields of family medicine, urgent care, and emergency medicine. (Id. ¶2.) Relying on his expertise and experience, Dr. Barnett concluded that Dr. Enenmoh acted well within the acceptable standards of care when he did not rush Plaintiff into surgery, in his limited role in the medications provided to Plaintiff, and in his approvals of Plaintiff's colonoscopy and hemorrhoid surgery. (Id. ¶¶1-7, 9.) Dr. Barnett found from his review of Plaintiff's medical records[4] that Plaintiff was seen regularly by health providers, that decisions about Plaintiff's care and medications were within the applicable standard of care, and that Dr. Enenmoh was responsive and not indifferent to Plaintiff's medical needs. (Id. ¶¶12-21.) Dr. Barnett also found that Plaintiff did not have an urgent need for a colonoscopy or hemorrhoid surgery, and that Dr. Enenmoh could not control the postponements or cancellations of Plaintiff's colonoscopy. (Id. ¶¶11h, 11w, 14; Pltf's Depo. at 22:3-22, Exh. A to ECF No. 232-5 at 13.)

Dr. Barnett also concluded that the undisputed facts reveal that Plaintiff was continually and appropriately treated for each of his conditions and even with delays in scheduling Plaintiff's colonoscopy and surgery, Plaintiff did not suffer any harm with respect to his colon, hemorrhoids, post-op care, or anemia, and therefore did not suffer any harm as a result of Dr. Enenmoh's breach of any duty owed to Plaintiff. (Barnett Decl. ¶16.)

## B. Deliberate Indifference – Eighth Amendment Violation

First, Defendant argues that Plaintiff did not have a serious medical need for a colonoscopy or hemorrhoid surgery. Dr. Barnett found that according to Plaintiff's medical records Plaintiff suffered from, at worst, Grade 1 hemorrhoids, which almost never require surgery, and the recommendation for a colonoscopy was routine and not urgent for someone Plaintiff's age (forty-three years old) with no family history of colon cancer. (Barnett Decl. ¶¶11f, 11k, 11m, 11y, 11z, 15.)

///

---

[4] On January 22, 2018, Defendants submitted "Exhibit B" to Dr. Barnett's declaration which consists of Plaintiff's medical records considered "most relevant" by Dr. Barnett, in chronological order. (ECF No. 232-4 at 4 ¶11; ECF No. 288.)

Next, Defendant argues that Dr. Enenmoh responded appropriately to Plaintiff's hemorrhoid condition. Plaintiff's treating physician, Dr. Raman, did not request hemorrhoid surgery until July 3, 2009, and Plaintiff was unable to make it to his scheduled surgery on August 26, 2009. (Id. ¶¶11w, 11x.) In September 2009 and November 2009, medical specialists disagreed about whether surgery was required. (Id. ¶¶11y, 11z.) On December 10, 2009, Plaintiff's treating physician recommended the hemorrhoidectomy and Dr. Enenmoh approved the surgery on December 12, 2009. (Id. ¶11aa.) Plaintiff received the surgery on December 30, 2009, within six months of its initial approval. (Id. ¶11bb; Pltf's Depo 16:12-14, 28:6-13, Exh A. to Lee Decl., ECF No. 232-5 at 12, 15.)

Defendant also argues that Plaintiff received all medically necessary medications after surgery and to treat his anemia. Plaintiff did not receive all of the medications recommended upon discharge from the hospital after surgery on December 30, 2009, but Dr. Barnett explains in his declaration that sitz baths are not necessary, Ibuprofen was duplicative of indomethacin, and Tylenol 3 can be severely constipating and is not ordinarily provided in the prison because of its potential for abuse. (Barnett Decl. ¶11ee.) Dr. Barnett found that while Plaintiff did not receive mineral oil, he already had other prescriptions to treat his constipation. (Id. ¶¶11ee, 11rr; Pltf's Depo 49:18-23, Exh A. to Lee Decl., ECF No. 232-5 at 31.) On February 23, 2010, upon discharge after being diagnosed with anemia, the discharge instructions prescribed iron, multivitamins, and folic acid. (Barnett Decl. ¶11rr; Pltf's Depo 49:18-23, Exh A. to Lee Decl., ECF No. 232-5 at 31.) Plaintiff did not receive the folic acid, which Dr. Barnett states was not necessary to Plaintiff's recovery because Plaintiff's anemia was due to iron deficiency and there was no indication that folic acid deficiency contributed to his condition. (Barnett Decl. ¶11ss.) Dr. Barnett found that by April 7, 2010, Plaintiff's folate, Vitamin B12, and iron levels were all normal and he was recovered from anemia. (Id. ¶11tt.)

Finally, Defendant argues that Dr. Enonmoh could not control the postponements or cancellations of Plaintiff's colonoscopy. Dr. Enenmoh was not Plaintiff's primary care physician, and Dr. Barnett found that the circumstances delaying surgery scheduled for June 19, 2009 were beyond Dr. Enonmoh's control. (Id. ¶11g, 11h, 11w, 14; Pltf's Depo 22:3-22,

Exh A. to Lee Decl., ECF No. 232-5 at 22.) Dr. Barnett found that Plaintiff did not suffer any harm as a result of the delay; Plaintiff was shown to have diverticulosis and no cancer, and no treatment for diverticulosis was necessary. (Barnett Decl. ¶¶15, 16.)

### C. Defendant's Burden

The court finds that Defendant has met his burden of demonstrating that he did not act with deliberate indifference or negligence against Plaintiff or cause him harm. The burden now shifts to Plaintiff to produce evidence of a genuine disputed fact that would affect the final determination in this case.

## VI. ANALYSIS[5]

Plaintiff's evidence consists of his own declarations (ECF Nos. 248 at 135, 248-2 at 227), and his prison medical records and other documentary evidence (ECF No. 248-1 at 50 – 248-2 at 277), including excerpts from Plaintiff's deposition (ECF No. 248-1 at 65, 151, 176; ECF No. 248-2 at 3), Defendant's responses to admissions (ECF No. 248-1 at 149, 198, 215; ECF No. 248-2 at 247, 274), and Defendant's responses to interrogatories (ECF No. 248-2 at 260).

The court has reviewed Plaintiff's opposition and supporting evidence and finds that Plaintiff has not produced admissible evidence of any genuine and material disputed fact to be decided at trial, for the reasons that follow.

### A. Negligence – Legal Standard

To state a claim for medical negligence or malpractice under California law, the plaintiff must establish "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Sampson v.

---

[5] Plaintiff submitted an Opposition to Defendant's Motion, consisting of: (1) Plaintiff's Arguments (ECF No. 248 at 1-128; (2) Response to Defendant's Expert Witness's (Dr. Barnett) Declaration (Id. at 129-154); (3) Response to Defendant's Statement of Undisputed Facts (Id. at 155-242); and Statement of Disputed Factual Issues (Id. at 243-500; ECF No 248-1 at 1-49). In addition, Plaintiff attached more than 400 pages of exhibits. (ECF No. 248-1 at 50-250; ECF No. 248-2 at 1-277.)

Ukiah Valley Med. Ctr., No. 15-CV-00160-WHO, 2017 WL 2834001, at *3 (N.D. Cal. June 30, 2017), quoting Machado v. Cal. Dep't of Corrs. and Rehab., 12-cv-6501-JSC, 2013 WL 5800380, at *5 (N.D. Cal. Oct. 28, 2013) (internal quotations omitted).

### B. California's Government Claims Act

Plaintiff's evidence fails to show that his negligence claim against Defendant Enenmoh, is not time-barred. Plaintiff's claim was received by the Board[6] on April 6, 2011, "only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented."[7] (Exh. B to Lee Decl., ECF No. 232-5 at 41.) Therefore, the Board accepted Plaintiff's claim only for allegations arising from events occurring during the six-month period from October 6, 2010 to April 6, 2011. The SAC alleges claims against Defendant Enenmoh for events occurring between 2007, when Plaintiff was first evaluated by Defendant Enenmoh, and February 2010, when Plaintiff alleges he failed to receive his required medications after his discharge from the hospital when he was found to have anemia. (SAC, ECF No. 140.) Under these facts, Plaintiff's claims arising from events before October 6, 2010, were not accepted by the Board, and therefore Plaintiff's claims against Defendant Enenmoh in the SAC are time-barred.

### C. Harm caused by breach of duty or deliberate indifference

Even if Plaintiff's negligence claim to the Board was not time-barred, Plaintiff fails to show that Defendant Enenmoh breached a duty to him or acted with deliberate indifference. In this case, Plaintiff's opinion that delays in his medical treatment or lack of particular

---

[6] Victim Compensation and Government Claims Board.

[7] Plaintiff argues that under the prison mailbox rule, his claim was filed on February 12, 2011, because that was the date he handed his claim to a corrections officer for mailing. However, to benefit from the mailbox rule, (1) a prisoner must proceed without counsel, and (2) the [filing] must be delivered to prison authorities for mailing *to the court* within the limitations period. Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (emphasis added). Courts have not applied the prison mailbox rule in cases where a prisoner delivers a filing to prison authorities for mailing to *someone other than the clerk of court*. Id. (emphasis added); Paige v. United States, 171 F.3d 559, 560–61 (8th Cir.1999). Therefore, the mailbox rule does not apply to Plaintiff's mailing of his claim to the Board.

medications caused him harm, is not admissible. Plaintiff claims that he had an urgent medical need for a colonoscopy and hemorrhoid surgery, and that Defendant Enenmoh caused delays, forcing Plaintiff to wait 3 1/2 years for these medical procedures. Plaintiff also claims that he would have recovered faster from his surgery and anemia if Defendant Enenmoh had properly trained and supervised his employees and insured that Plaintiff received more-timely care and the appropriate medications.

Under Federal Rules of Evidence 701, Plaintiff, a layperson, is not qualified to offer medical opinions or conclusions based on his symptoms or the course of his medical treatment. Plaintiff's opinion that he had an urgent need for surgery or that his outcome would have been more favorable if he received immediate surgery, or was given certain medications, is not admissible. Only an expert witness with specialized knowledge may determine whether Defendant Enenmoh's conduct was within the appropriate standard of care, whether Defendant's actions or failure to act were the cause of any harm, or if delays in Plaintiff's colonoscopy or surgery led to further harm.

### D. Plaintiff's Burden

Based on the foregoing, the court finds that Plaintiff has not met his burden to provide evidence of a genuine material fact in dispute that would affect the final determination in this case, and therefore Defendant Enenmoh is entitled to summary judgment against him.

## VII. QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting Reichle v. Howards, 566 U. S. 658, 132 S.Ct. 2088, 2093 (2012). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting Robinson v. York, 566 F.3d 817, 821

///

(9th Cir. 2009). These prongs need not be addressed in any particular order. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808 (2009).

If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Here, the court finds that Plaintiff has not established a violation of his Eighth Amendment rights. Accordingly, there is no need for further inquiry concerning qualified immunity.

## VIII. CONCLUSION AND RECOMMENDATIONS

Defendant Enenmoh has submitted evidence that he did not act with deliberate indifference or negligence when treating Plaintiff for rectal bleeding, pain, or other symptoms, or when he did not insure that Plaintiff received all of the medications Plaintiff claims that he needed. Plaintiff did not produce any admissible evidence in response to Defendant's evidence that created a disputed issue of material fact for trial. Accordingly, Defendant Enenmoh is entitled to summary judgment on Plaintiff's claims against him, and Defendant Enenmoh's motion for summary judgment, filed on May 9, 2017, should be granted.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Enenmoh's motion for summary judgment, filed on May 9, 2017, be GRANTED;

2. Judgment be entered in favor of Defendant Enenmoh; and

3. This case proceed only against the remaining defendants, if any; or, if there are no remaining defendants, this case be closed by the Clerk of Court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after the date the objections are filed. The parties are

advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 29, 2018**                    **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE